UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

BETHANIA RODRIGUEZ, Individually and
on Behalf of All Other Persons Similarly Situated,

                       Plaintiff,

           -against-

NEW YORK FOUNDATION FOR SENIOR
CITIZENS HOME ATTENDANT SERVICES, INC.,
LINDA R. HOFFMAN, and JOHN DOES #1-10,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

15-CV-9817 (VEC)(HBP)

ELECTRONICALLY FILED

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## TO COMPEL ARBITRATION AND DISMISS THE ACTION

EPSTEIN BECKER & GREEN, P.C.
*Attorneys for Defendants*
250 Park Avenue
New York, New York 10177
(212) 351-4500

Of Counsel:
    Kenneth W. DiGia
    Jeffrey H. Ruzal
    Adriana S. Kosovych

FIRM:35273697

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF THE CASE............................................................................................... 2

ARGUMENT.......................................................................................................................... 6

PLAINTIFF IS REQUIRED TO ARBITRATE HER CLAIMS ............................................. 6

A.   The Federal Arbitration Act Governs Plaintiff's Agreement to Arbitrate............................. 6

B.   Arbitration Should Be Compelled. ....................................................................................... 8

   1.   The Parties Agreed to Arbitrate. ....................................................................................... 8

   2.   Plaintiff's Claims Fall Within the Scope  of the Arbitration Agreement. ......................... 9

   3.   There Is No Evidence that Plaintiff's Statutory Claims  Were Intended to Be
       Non-Arbitrable.............................................................................................................. 13

   4.   Hoffman Is Protected By The Agreement To Arbitrate................................................... 14

C.   This Action Should Be Dismissed. ..................................................................................... 16

CONCLUSION...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009)........................................................................................9, 13

*Arciniaga v. Gen. Motors Corp.*,
   460 F.3d 231 (2d Cir. 2006)...................................................................................7

*Arrigo v. Blue Fish Commodities, Inc.*,
   408 Fed. App'x 480 (2d Cir. 2011)........................................................................11

*Arrigo v. Blue Fish Commodities, Inc.*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010).......................................................12, 13, 15

*Brener v. Becker Paribas, Inc.*,
   628 F. Supp. 442 (S.D.N.Y 1985) ........................................................................15

*BS Sun Shipping Monrovia v. Citroen Petroleum Corp.*,
   2006 U.S. Dist. LEXIS 54588 (S.D.N.Y. Aug. 8, 2006)..........................................4

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
   No. 15-CV-9605, Docket No. 42 (S.D.N.Y. Feb. 3, 2016) ...........................2, 9, 11

*Ciago v. Ameriquest Mortgage Co.*,
   295 F. Supp. 2d 324 (S.D.N.Y. 2003).............................................................13, 14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...............................................................................................8

*Duraku v. Tishman Speyer Properties, Inc.*,
   714 F. Supp. 2d 470 (S.D.N.Y. 2010)...................................................................11

*Garcia v. Frank*,
   2010 U.S. Dist. LEXIS 142619 (S.D.N.Y. Aug. 2, 2010).......................................11

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987).............................................................................7, 10

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000).................................................................................................7

ii

*Guida v. Home Sav. of Am., Inc.*,
   793 F. Supp. 2d 611 (E.D.N.Y. 2011) ................................................................4

*JLM Indus. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004).................................................................................7

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015)...............................................................................16

*Lawrence v. Sol G. Atlas Realty Co.*,
   2015 U.S. Dist. LEXIS 114063 ..........................................................................16

*Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*,
   239 F. Supp. 2d 332 (S.D.N.Y. 2010).................................................................13

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*,
   107 F.3d 979 (2d Cir. 1997)..................................................................................7

*Metzler v. Harris Corp.*,
   2001 U.S. Dist. LEXIS 1903 (S.D.N.Y. Feb. 26, 2001) .....................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).................................................................................................12

*Murphy v. Canadian Imperial Bank of Commerce*,
   709 F. Supp. 2d 242 (S.D.N.Y. 2010)...................................................................4

*Okuma v. Crotona Park West Hous. Dev. Fund Corp.*,
   2014 U.S. Dist. LEXIS 143444 (S.D.N.Y. Sept. 29, 2014)..............................7, 14

*Oldroyd v. Elmira Sav. Bank*,
   134 F.3d 72 (2d Cir. 1998).............................................................................12, 13

*Polit v. Global Foods Int'l Corp.*,
   2015 U.S. Dist. LEXIS 51686 (S.DN.Y. Apr. 20, 2015)....................................2, 14

*Pontier v. U.H.O. Mgmt. Corp.*,
   2011 U.S. Dist. LEXIS 37208 (S.D.N.Y. Apr. 1, 2011)........................................11

*Reynolds v. de Silva*,
   2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010)....................7, 10, 12, 14

*Roby v. Corporation of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)...............................................................................15

iii

*Rossi v. SCI Funeral Servs. of N.Y.*,
    2016 U.S. Dist. LEXIS 16524 (S.D.N.Y. Jan. 28, 2016)........................................................16

*Scher v. Bear Stearns & Co.*,
    723 F. Supp. 211 (S.D.N.Y. 1989) ...................................................................................15

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)................................................................................................2

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)............................................................................................................8

*Sinnett v. Friendly Ice Cream Corp.*,
    319 F. Supp. 2d 439 (S.D.N.Y. 2004)...............................................................................13

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)..........................................................................................10, 11

*Steele v. L.F. Rothschild & Co.*,
    701 F. Supp. 407 (S.D.N.Y. 1988) .............................................................................13, 14

*Thomas James Assocs. v. Jameson*,
    102 F.3d 60 (2d Cir. 1996)................................................................................................12

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003)................................................................................................8

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
    2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015)...............................................13, 14

**Statutes**

9 U.S.C. § 1 *et seq.*............................................................................................................6

9 U.S.C. § 2........................................................................................................................7

9 U.S.C. § 4........................................................................................................................8

iv

## PRELIMINARY STATEMENT

On December 16, 2015, Plaintiff Bethania Rodriguez commenced this hybrid class/collective action, which arises from her employment with defendant New York Foundation for Senior Citizens Home Attendant Services, Inc. ("Home Attendant Services" or "HAS"). Proceeding on behalf of herself and other home health aides she seeks to represent, Plaintiff asserts the following claims against HAS and Linda Hoffman, President of HAS:  failure to pay minimum wage and/or overtime under the Fair Labor Standards Act ("FLSA"); failure to pay minimum wage and/or overtime under the New York Labor Law ("NYLL"); failure to pay wages as required under the New York Home Care Worker Wage Parity Law ("Wage Parity Act"); failure to provide wage notices and wage statements under the New York Wage Theft Prevention Act ("WTPA"); breach of contract; and unjust enrichment.

All of the claims asserted in this action are directly covered by the collective bargaining agreement ("CBA") between Plaintiff's bargaining representative, 1199 SEIU United Healthcare Workers East ("1199" or the "Union") and HAS.  As set forth herein, the CBA, as amended by a 2015 Memorandum of Agreement ("MOA"), explicitly provides that the federal and state wage-hour and related claims asserted in this action are subject exclusively to the grievance and arbitration procedures set forth in the CBA.  The express language of the CBA requires mediation and arbitration of this matter on an individual basis.

The Honorable Katherine B. Forrest recently enforced an identical arbitration agreement in *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 15-CV-9605.  In *Chan*, the arbitration agreement (which was embodied in a virtually identical 2015 MOA between 1199 and another home attendant program) contained the same express language at issue here, specifically covering statutory wage-hour and wage parity claims.  Based on that

1

arbitration agreement, Judge Forrest compelled the plaintiffs to arbitrate claims brought under the FLSA, NYLL and Wage Parity Act. *Chan*, No. 15-CV-9605 (KBF) (SN), Memorandum Decision and Order, Docket No. 42 (S.D.N.Y. Feb. 3, 2016).[1]

In accordance with the Federal Arbitration Act and pursuant to the express arbitration provision contained in the CBA, this Court should dismiss this action and compel Plaintiff to arbitrate her claims on an individual basis.

## STATEMENT OF THE CASE[2]

HAS is a not-for-profit corporation that provides home health care services to elderly and disabled clients in New York City. (Second Amended Complaint (hereinafter "SAC") ¶ 29).[3] Ms. Hoffman is the President of HAS. (SAC ¶ 9). Plaintiff was employed by HAS as a home health aide from July 2014 to June 2015. (SAC ¶ 28). Plaintiff seeks to represent current and former home health aides who have been employed with HAS from December 16, 2009 to present. (SAC ¶¶ 13, 21).

As a home health aide, Plaintiff provided services to HAS clients in New York City. (SAC ¶¶ 29, 30). According to the Second Amended Complaint, Plaintiff generally worked three to five days per week, providing services to two clients each day. (SAC ¶¶ 48, 50).

---

[1] On February 17, 2016, the plaintiffs in *Chan* moved for reconsideration of the Court's Order compelling arbitration. *Chan*, No. 15-9605 (Docket No. 44). The defendant, CPC, filed its opposition to plaintiffs' motion on March 7, 2016 (Docket No. 45). The motion for reconsideration is pending before the Court.

[2] The following facts are taken from the allegations in the Second Amended Complaint, dated February 26, 2016 (Docket No. 28), which must be accepted as true for the purposes of this motion. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012); *Polit v. Global Foods Int'l Corp.*, 2015 U.S. Dist. LEXIS 51686 (S.D.N.Y. Apr. 20, 2015). Defendants will, of course, dispute all material allegations in all other contexts. Certain facts are also taken from documents submitted by Defendants in connection with this motion.

[3] References to the paragraphs of the Second Amended Complaint, a copy of which is attached to the Declaration of Kenneth W. DiGia, dated March 18, 2016, as Exhibit A, are designated as (SAC ¶ __). All other exhibits, referenced herein as "Ex. __," are also attached to the DiGia Declaration.

FIRM:35273697

Plaintiff was generally scheduled to work nine hours per work day, consisting of four hours with one client, followed by one hour of travel, and four hours with a second client.  (SAC ¶¶ 48, 49).  Some of the services Plaintiff provided to certain HAS clients were reimbursable through government funding.  (SAC ¶¶ 39, 45).  Plaintiff "was generally paid $10.00 per hour, $10.50 per hour or $11.10 per hour for the hours for which she was given credit."  (SAC ¶ 32).

Plaintiff alleges that Defendants violated the FLSA, the NYLL, the Wage Parity Act and the WTPA.  (SAC ¶¶ 70, 76, 79, 94).  Plaintiff claims that she and other home health aides were not paid their regular wages for all hours worked and were not paid the overtime premium (time and one-half) for hours worked in excess of 40 hours per week.  (SAC ¶ 31, 33, 37, 38, 61, 62).  Plaintiff alleges further that she and other home health aides were not paid any wages for time spent traveling between clients during the workday, and that she and other home health aides were not reimbursed their travel expenses.  (SAC ¶¶ 35, 36, 43, 61, 62).  With respect to work performed servicing clients covered by New York State Medicaid, Plaintiff alleges that she and other home health aide employees were not paid wages required by the Wage Parity Act.  (SAC ¶¶ 46, 61, 62).  Finally, Plaintiff claims that HAS failed to provide adequate notice of her rate of pay as required by the Wage Theft Prevention Act.  (SAC ¶ 63).  In addition to HAS, Plaintiff seeks to hold Ms. Hoffman liable for these alleged violations by claiming that, in her role as President of HAS, Ms. Hoffman "exercised operational control" over the home health aides and, among other things, "determined the rate and method of payment of the home health aide employees." (SAC ¶¶ 10,11).

3

The CBA (as modified and extended by subsequent MOAs) between HAS and 1199 sets forth all of the pay practices, work hour, wage parity and other issues that Plaintiff challenges here.[4] Article X ("Wages") of the CBA, as amended by the 2015 MOA, provides:

1. Employees shall be paid no less than $10.00 per work hour, except as otherwise stated in this Agreement (the "Base Rate").

   \*\*\*

8. In the event the State or Federal minimum wage increases above $10.00 per hour, the minimum rate of home care compensation under the New York State Home Care Worker Wage Parity Act ("Wage Parity Law") increases, or additional State or Federal monies are otherwise made available for wage increases, the parties shall meet and discuss the application of such increases or additional monies.

9. Effective October 13, 2015, an employee who works for the Employer more than forty (40) hours in a workweek will be paid overtime pay at the rate of 1 and ½ times the Employees' regular rate ("Overtime Pay") for hours worked in excess of forty (40) during such week ("Overtime Hours"). An Employee entitled to Overtime Pay for a particular hour will not be eligible to receive differential pay (including but not limited to weekend differential or mutual case differential) for that same hour. For example, for an Episode of Care Overtime Hour on a weekend the employee would be paid $15.00 (not $1.10 differential in addition to $15.00 per hour).

---

[4] Article I of the CBA ("Recognition") provides that HAS "recognizes the Union as the sole and exclusive collective bargaining representative of the full-time and regular part-time Home Attendants employed by the Employer." Ex. B at p. 1, Art. I sec. 1. The CBA has been in place since 2001 (*see* Exs. B, C), and thus covers the entirety of the class period alleged, from 2009 to present.

The Court may properly consider the CBA and 2015 MOA between HAS and 1199, even though they were not attached to or incorporated by reference in the Second Amended Complaint, because a court is permitted to consider documents outside the pleadings for the purposes of determining the arbitrability of a dispute. *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242 (S.D.N.Y. 2010); *see also BS Sun Shipping Monrovia v. Citroen Petroleum Corp.*, 2006 U.S. Dist. LEXIS 54588, \*10 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.") (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001)); *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011) ("The Court may properly consider documents outside of the pleadings for purposes for deciding a motion to compel arbitration.").

4

Ex. B at pp. 1-2, Art. X secs. 1, 8, 9.  Article XI ("Hours") addresses travel time between clients.

(Ex. B at p. 2, Art. XI sec. 5 ("…travel time between case assignments constitutes hours worked"

and "…will be paid at the higher of the Federal or New York State minimum wage per hour.")).

The CBA also specifically addresses the Wage Parity Act, and provides that any disputes over

whether the economic terms of the CBA are compliant with the Wage Parity Act must be

resolved through arbitration:

> 1.      Payment of the economic terms of this Memorandum of Agreement is
> conditioned upon their compliance with the Home Care Worker Wage Parity Law
> Public Health Law, Section 3614-c.  If a party claims that a term is non-
> compliant, the parties will immediately meet to discuss appropriate modifications
> to bring the MOA into compliance with the Wage Parity Law.  In the event the
> parties cannot resolve their dispute, the matter shall be referred to Martin F.
> Scheinman for resolution through binding arbitration.

Ex. B at p. 8, "Home Care Worker Wage Parity Law" sec. 1.

Pursuant to the terms of the CBA, Plaintiff is required to adhere to the grievance and

arbitration procedures of the CBA for all of the claims she asserts in this action.  Specifically, "to

ensure the uniform administration and interpretation of [the] Agreement in connection with

federal, state, and local wage-hour and wage parity statutes," HAS and the Union have agreed to

relegate to mediation and arbitration all federal, state and local wage hour law and wage parity

related claims.  (Ex. B at pp. 8 ¶¶ 1, 2).   The 2015 MOA modifying the CBA incorporates a

dispute resolution mechanism ("Alternative Dispute Resolution" or "ADR"), which provides, in

relevant part:

> 1.      The parties agree that a goal of this Agreement is to ensure compliance with all
> federal, state, and local wage hour law and wage parity statutes.  Accordingly, to
> ensure the uniform administration and interpretation of this Agreement in
> connection with federal, state, and local wage-hour and wage parity statutes, all

5

claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any matter, shall be subject *exclusively*, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Martin F. Scheinman, Esq. The Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

Ex. B at pp. 8-9, "ADR" sec. 1 (emphasis added).

All of Plaintiff's wage and hour claims asserted in this action relate to the Covered Statutes set forth in the CBA and are therefore subsumed by the arbitration agreement.[5] Despite the plain language of the arbitration agreement, Plaintiff failed to abide by the terms of the CBA and, instead, commenced this action. The Court should grant this motion, dismiss the action and compel Plaintiff to follow the terms of the CBA and mediate/arbitrate her claims on an individual basis.

## ARGUMENT

## PLAINTIFF IS REQUIRED TO ARBITRATE HER CLAIMS

### A.    The Federal Arbitration Act Governs Plaintiff's Agreement to Arbitrate.

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a

---

[5] The arbitration agreement specifically states that "[s]uch claims may be presented by and on behalf of the individual Employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis." Ex. B at p. 9, "ADR" sec. 4.

6

controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable…." 9 U.S.C. § 2.   The Second Circuit has made clear that "[c]ollective bargaining agreements are contracts entailing transactions in commerce," and therefore "fall[] within the purview of the Act." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 982 (2d Cir. 1997); *see also Okuma v. Crotona Park West Hous. Dev. Fund Corp.*, 2014 U.S. Dist. LEXIS 143444, *12 (S.D.N.Y. Sept. 29, 2014) (applying FAA to enforce arbitration agreement contained in collective bargaining agreement and compelling arbitration).

The FAA is an "expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted); *see also Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration."); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (recognizing the FAA as a "Congressional declaration of a liberal federal policy favoring arbitration agreements").   Consequently, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

A court assesses four factors to determine whether arbitration should be compelled under the FAA:  (1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of the agreement; (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Indus.*, 387 F.3d at 169; *Reynolds v. de Silva*, 2010 U.S. Dist. LEXIS 18040, *6

7

(S.D.N.Y. Feb. 24, 2010).   Where a party to a valid arbitration agreement asserts arbitrable claims in a judicial forum that fall within the scope of the agreement, as Plaintiff does here, the FAA requires the Court to compel arbitration.  9 U.S.C. § 4; *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985) ("[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003).

The Court should dismiss this action and compel mediation/arbitration of Plaintiff's claims on an individual basis because, as shown below, Plaintiff, through her Union, is party to a valid arbitration agreement, and all of her claims fall within the scope of the arbitration agreement and are arbitrable.

### B.   Arbitration Should Be Compelled.

#### 1.   The Parties Agreed to Arbitrate.

By its plain terms, the CBA expressly evinces the parties' intention to arbitrate all of the claims asserted by Plaintiff in this action, including all claims brought under the FLSA, NYLL and Wage Parity Act.

The 2015 MOA that was negotiated and agreed by HAS and 1199 clearly specifies that all wage and hour-related claims brought by employees or the Union must be submitted exclusively to the alternative dispute resolution procedures provided for in the agreement.  This valid arbitration agreement should be enforced here.  The 2015 MOA provides, in relevant part:

> The parties agree that a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any matter, shall be subject exclusively, to the grievance and arbitration procedures described in this Article.

Ex. B at p. 8, "ADR" at sec. 1.  The CBA thus clearly and unmistakably memorializes the parties' enforceable agreement to arbitrate the precise claims brought here, including all claims brought under the FLSA, NYLL and Wage Parity Act.  *Chan*, No. 15-CV-9605, Docket No. 42 (S.D.N.Y. Feb. 3, 2016).

Where, as here, a union, on behalf of its members, and an employer have bargained for the claims asserted to be arbitrated, "[c]ourts generally may not interfere in this bargained-for exchange."  *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) (union acted within its statutory authority to freely negotiate for an arbitration provision on behalf of its members, requiring arbitration of individual employment discrimination claims and other statutory claims, including minimum wage claims under the FLSA).  Accordingly, the Court should enforce the parties' agreement to arbitrate.

### 2. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Plaintiff's claims fall squarely within the scope of the arbitration agreement.  The 2015 MOA "Alternative Dispute Resolution" article expressly applies to "all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law

9

("collectively, the "Covered Statutes")."   (Ex. B at p. 8, "ADR" sec. 1).   Furthermore, the agreement directs the arbitrator to "apply appropriate law and … award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article."   *Id.*   Thus, by its plain language, the wage and hour claims asserted in this action under the FLSA, NYLL and Wage Parity Act relate to the Covered Statutes set forth in the CBA and clearly are subsumed under the arbitration agreement.[6]

The fact that Plaintiff's employment with HAS ended prior to the effective date of the 2015 MOA does not relieve Plaintiff of her obligation to abide by the mediation and arbitration provision of the CBA.   Nor does the fact that her claims may have accrued prior to the 2015 MOA's effective date diminish the arbitrability of such claims.   The plain language of the arbitration provision states that "***all* claims**" arising under the FLSA, NYLL or Wage Parity Act are subject exclusively to the grievance and arbitration procedures of the CBA.   *See* Ex. C at p. 8, "ADR" sec. 1.   Conspicuously absent from this provision is any language placing a temporal limitation on the scope of the arbitration agreement.

The Second Circuit has consistently held that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitration.   *See Smith/Enron Cogeneration Ltd. P'ship, Inc.*

---

[6] This includes Plaintiff's common law claims for breach of contract and unjust enrichment (SAC ¶¶ 81-86, 97-90), which are tied to Plaintiff's statutory FLSA and NYLL claims and specifically invoke the Wage Parity Act.   "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Reynolds*, 2010 U.S. Dist. LEXIS 18040, at *8-9 (quoting *Genesco*, 815 F.2d at 846).   If the allegations underlying the claims "touch matters" covered by the parties' agreement, then those claims must be arbitrated. *Genesco*, 815 F.2d at 846.

10

*v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98-99 (2d Cir. 1999) (compelling arbitration of claims "arising under or relating to" arbitration agreement, including claims pre-dating the arbitration clause); *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. App'x 480, 481-82 (2d Cir. 2011) (summary order) (affirming order compelling arbitration of all overtime claims under FLSA and NYLL, including those that accrued prior to the creation of the arbitration agreement, where arbitration agreement encompassed "all federal and state statutory claims" and lacked an express temporal limitation on arbitrability); *see also Chan*, No. 15-CV-9605, Docket No. 42, p. 5 (rejecting as "meritless" plaintiffs' argument that an agreement to arbitrate cannot apply retroactively); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470 (S.D.N.Y. 2010) (retroactively applying a supplemental agreement to the CBA with defendant-employer in 2010 requiring mediation and arbitration of discrimination claims to compel arbitration of statutory discrimination and retaliation claims asserted in an action commenced in 2009).   Under these circumstances, Plaintiff is required to mediate/arbitrate her claims, regardless of when her employment with HAS ended or when her claims accrued. *See Pontier v. U.H.O. Mgmt. Corp.*, 2011 U.S. Dist. LEXIS 37208, *8 (S.D.N.Y. Apr. 1, 2011) (plaintiff, whose employment ended in September 2007, was required to arbitrate statutory discrimination claims pursuant to a February 2010 supplemental agreement amending CBA to require mediation and arbitration of discrimination claims); *Garcia v. Frank*, 2010 U.S. Dist. LEXIS 142619, *11 (S.D.N.Y. Aug. 2, 2010) (where plaintiff whose employment terminated in May 2008 filed action asserting statutory discrimination and retaliation claims in May 2009, compelling plaintiff to arbitrate pursuant to a February 2010 agreement containing mandatory mediation and arbitration protocol that covered plaintiff's claims).

Even if, *arguendo*, any question existed as to the "scope of arbitrable issues" here, such question must to be resolved in favor of arbitration.  *See Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 302 (S.D.N.Y. 2010), *aff'd*, 408 Fed. App'x 480 (2d Cir. Feb. 7, 2011).  Arbitration must be compelled "unless it may be said ***with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute***." *Oldroyd*, 134 F.3d at 76 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (emphasis in *Oldroyd*); *see also Thomas James Assocs. v. Jameson*, 102 F.3d 60, 65 (2d Cir. 1996); *Reynolds*, 2010 U.S. Dist. LEXIS 18040, at *7.  Indeed, in accordance with the strong federal policy favoring arbitration, courts should "construe arbitration clauses as broadly as possible." *Oldroyd*, 134 F.3d at 76 (quoting *Collins & Aikman Prod. Co v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995)).

The crux of Plaintiff's claims is the underlying factual allegation that she did not receive compensation to which she was entitled during her employment with HAS.  Thus, Plaintiff's FLSA, NYLL and Wage Parity Act claims are inextricably tied to the terms of the CBA governing the terms and conditions of her employment.  Based on the foregoing, Plaintiff's claims fall within the scope of the agreement to arbitrate.  The Second Amended Complaint should be dismissed and Plaintiff should be compelled to mediate/arbitrate her claims on an individual basis in accordance with the arbitration agreement.

FIRM:35273697

### 3. There Is No Evidence that Plaintiff's Statutory Claims Were Intended to Be Non-Arbitrable.

All of the claims asserted in the Second Amended Complaint are arbitrable. It is well settled that federal statutory claims – including claims brought under the FLSA – can be the subject of arbitration, absent a showing by the party opposing arbitration of a contrary congressional intent.[7] *See Oldroyd*, 134 F.3d at 77-78; *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421, *47 (S.D.N.Y. May 6, 2015) ("There is no evidence that Congress intended FLSA claims to be non-arbitrable"); *Arrigo*, 704 F. Supp. 2d at 304 ("Congress has not evinced an intention to preclude arbitration of FLSA claims"); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) ("[plaintiff] did not waive any of his rights under the FLSA by entering into an arbitration agreement; rather he has agreed to have those rights adjudicated in an alternative forum than this Court" and therefore "claims brought under the FLSA may be addressed pursuant to an arbitration provision").

---

[7] "Statutory claims may be the subject of an arbitration agreement enforceable pursuant to the FAA." *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2010) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Where an arbitration agreement requires the arbitration of disputes involving a federal statute, the parties to a valid arbitration agreement are compelled to arbitrate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum...." *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) (quoting *Gilmer*, 500 U.S. at 28) (internal citation omitted). Stated differently, the FAA requires enforcement of agreements to arbitrate statutory claims, unless the party opposing arbitration shows, either from the statute's text or legislative history or from "an inherent conflict between arbitration and the statute's underlying purpose" that Congress intended to preclude a waiver of the judicial forum. *Steele v. L.F. Rothschild & Co.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (quoting *Shearson/American Express*, 482 U.S. at 227); *14 Penn Plaza*, 556 U.S. at 257 (finding that "having made the bargain to arbitrate, a party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue") (citing *Gilmer*, 500 U.S. at 26) (internal quotations omitted). Plaintiff cannot do so here.

13

Plaintiff's state law claims are similarly arbitrable.  Nothing in the New York Labor Law indicates that the state legislature intended to preclude compulsory arbitration of claims under those provisions.  *See Okuma*, 2014 U.S. Dist. LEXIS 143444, at *16 ("Plaintiff's fifth cause of action, which alleges that Defendants violated New York labor law, is also arbitrable under the CBA…. [B]ecause the claim stems from the CBA, which defines Plaintiff's rights to sick leave, dismissal, severance pay, and vacation time, resolving the claim requires interpretation of the CBA"); *Reynolds*, 2010 U.S. Dist. LEXIS 18040, at *13-14 ("Courts in this District have also consistently found claims asserted under the NYLL to be arbitrable."); *Metzler v. Harris Corp.*, 2001 U.S. Dist. LEXIS 1903, *3-5 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of claims asserted under New York Labor Law); *Steele*, 701 F. Supp. at 408 (same); *Ciago*, 295 F. Supp. 2d at 334 (same).  Finally, claims under the Wage Parity Act are arbitrable.  *Chan*, No. 15-CV-9605, Docket No. 42 at p. 4 (compelling arbitration of Wage Parity Act claims asserted by home health aides).

All of Plaintiff's federal and state statutory wage-hour and related claims asserted are arbitrable.  *Victorio*, 2015 U.S. Dist. LEXIS 61421, at *47 ("Courts in this District have repeatedly found both FLSA and NYLL claims to be arbitrable."); *Polit v. Global Foods Int'l Corp.*, 2015 U.S. Dist. LEXIS 51686, *6 n.5 (S.D.N.Y. Apr. 20, 2015) (same).  Accordingly, the Court should dismiss Plaintiff's action and compel Plaintiff to mediate/arbitrate her claims on an individual basis.

### 4. <u>Hoffman Is Protected By The Agreement To Arbitrate.</u>

Second Circuit precedent requires that Plaintiff's claims against Ms. Hoffman must also be arbitrated.  It is well established that "employees or disclosed agents of an entity that is a

14

party to an arbitration agreement are protected by that agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993) (individual chairs of the governing bodies of defendant's insurance syndicates were entitled to rely on arbitration provisions incorporated into their employers' agreements, notwithstanding that the chairs were not signatories to any agreement with the investors); *Arrigo*, 704 F. Supp. 2d at 303 (arbitration provision contained in employment agreement protected CEO, as the employer's agent, despite the fact that he was not a party to the agreement, where claims asserted fell within the scope of the arbitration provision); *see also Scher v. Bear Stearns & Co.*, 723 F. Supp. 211, 216-17 (S.D.N.Y. 1989) (finding that acts by employees of one of the parties to an agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the agreement); *Brener v. Becker Paribas, Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y 1985) (same).

Plaintiff alleges that Ms. Hoffman, in her capacity as "President and Chief Executive Officer and Executive Director" of HAS, "exercised operational control over ... home health aide employees and other employees and her decisions directly affected the nature and condition of the home health care employees." (SAC ¶ 10). Plaintiff alleges further, upon information and belief, that Ms. Hoffman had the authority, among other things, to control home health aide employees' work schedules and to determine their rate and method pay. (SAC ¶ 11). Based on this pleading, all of Ms. Hoffman's alleged actions as they relate to HAS' pay practices and Plaintiff's terms and conditions of employment fall within the scope of the arbitration agreement. Therefore, all of Plaintiff's claims against Ms. Hoffman should also be arbitrated.

15

**C.**     **This Action Should Be Dismissed.**

Where all of the issues raised in a plaintiff's complaint must be submitted to arbitration and neither party has requested a stay, courts have the discretion to dismiss the case entirely. *See, e.g.*, *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all claims in an action have been referred to arbitration and a stay requested"); *Lawrence v. Sol G. Atlas Realty Co.*, 2015 U.S. Dist. LEXIS 114063, *14-15 (even in light of *Katz*, dismissal of the action was still appropriate where all of the claims were referred to arbitration and neither party requested a stay); *Rossi v. SCI Funeral Servs. of N.Y.*, 2016 U.S. Dist. LEXIS 16524, * 42 (S.D.N.Y. Jan. 28, 2016) (in deciding parties' cross-motions to enforce arbitration agreement, recommending that the District Court dismiss, rather than stay, the action).

As demonstrated above, all of Plaintiff's claims asserted in the Second Amended Complaint are covered by the arbitration agreement contained in the CBA and are arbitrable. The Court should dismiss this action and compel mediation/arbitration of Plaintiff's claims on an individual basis in accordance with the terms of the arbitration agreement.

16

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.   This action should be dismissed and Plaintiff should be compelled to mediate/arbitrate her claims on an individual basis.

Dated: New York, New York
      March 18, 2016

EPSTEIN BECKER & GREEN, P.C.

By: Kenneth W. DiGia
    Jeffrey H. Ruzal
    Adriana S. Kosovych
    250 Park Avenue
    New York, New York 10177
    (212) 351-4500
    *Attorneys for Defendants, New York*
    *Foundation for Senior Citizens Home*
    *Attendant Services, Inc. and Linda R.*
    *Hoffman*

17