William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BETHANIA RODRIGUEZ,                                :          ECF
Individually and on Behalf of All Other            :          15 Civ. 9817(VEC)
Persons Similarly Situated,                        :
                                                   :
                        Plaintiff,                 :
                                                   :
        -against-                                  :
                                                   :
NEW YORK FOUNDATION FOR SENIOR                      :
CITIZENS HOME ATTENDANT SERVICES,INC.,             :
LINDA R. HOFFMAN and JOHN DOES #1-10,               :
                                                   :
                        Defendants.                :
-------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION


Dated: New York, New York
       April 12, 2016



                        LAW OFFICE OF WILLIAM COUDERT RAND

                        William Coudert Rand, Esq.
                        *Attorney for Plaintiff*, Individually and on
                        Behalf of All Persons Similarly Situated
                        501Fifth Ave., 15th Floor
                        New York, New York 10017
                        Tel: (212) 286-1425
                        Fax: (646) 688-3078
                        Email: wcrand@wcrand.com

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT…………………………………………………………………1

STATEMENT OF FACTS……………………………………………………………………..4

I.    ARBITRATION CANNOT BE COMPELLED BECAUSE THERE IS NO
BINDING CONTRACT TO ARBITRATE BECAUSE (A) THE 2015 MOA HAS
NOT BEEN SIGNED BY THE UNION, (B) HAS NOT BEEN RATIFIED BY
THE UNION'S MEMBERSHIP, (C) HAS NOT BEEN RATIFIED BY THE
EMPLOYER'S BOARD OF DIRECTORS, AND (D) HAS NOT BEEN APPROVED
BY THE NEW YORK CITY HUMAN RESOURCES ADMINISTRATION………...6

    A.    The 2015 MOA submitted by Defendants is not signed by the Union……..…..6

    B.    Defendant Has Not Proven That the 2015 MOA Has Been Ratified
By "the Union and its membership and by the Board of Directors
of the Employer."………………………………………………………………7

    C.    The 2015 MOA has not been approved by the New York City Human
Resource Administration……………...………………………………………..7

    D.    Because Defendants have not Met their Burden to Show that a Binding
Arbitration Agreement has been Formed, The Court Must Deny Their
Motion to Compel Arbitration…………………………………………………7

    E.    The Collective Bargaining Agreement Absent the 2015 MOA
Does Not Constitute an Agreement to Arbitrate…………………………………10

II.    EVEN IF THE 2015 MOA IS EVENTUALLY RATIFIED, IT DOES NOT
REQUIRE PLAINTIFF AND SIMILAR EMPLOYEES TO ARBITRATE
THEIR CLAIMS………………………………………………………………………11

    A.    Binding Precedent Precludes a CBA from Waiving an Employee's Right
To Assert FLSA Claims in Federal Court………………………………………..11

    B.    The 2015 MOA Precludes Plaintiffs From Effectively Vindicating Their Rights
Under the FLSA and NYLL and therefore Its Arbitration Provision Should
Not be Enforced…………...………………………...…………………………...13

    C.    Defendants' Communications Through the Union with Potential Class Members
Render the Arbitration Provision of the 2015 MOA Unenforceable……………16

i

III.   EVEN IF THE 2015 MOA IS RATIFIED AND IS ENFORCEABLE IT
       ONLY APPLIES TO CLAIMS ARISING ON OR AFTER DECEMBER 1, 2015……19

       A.   The 2015 MOA is Prospective…………………………………………………...19

       B.   Defendant's Cases Are Not on Point……………………………………………22

CONCLUSION…………………………………………………………………………………..23

# TABLE OF AUTHORITIES

**CASES:**                                                                                                        **PAGE**

14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009) ..10

Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005) .........................................................9

Agerbrink v. Model Service LLC, No. 14 Civ. 7841(JPO)(JCF), 2015 WL 6473005
(S.D.N.Y. Oct. 27, 2015) ...............................................................................................16

Alderman v. 21 Club Inc., 733 F. Supp. 2d 461 (S.D.N.Y. 2010)....................................12

Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)............13

Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522 (2d Cir.
2011) ..............................................................................................................................8

Arrigo v. Blue Fish Commodities, Inc., 408 F. App'x 480 (2d Cir. 2011) .......................22

Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299 (S.D.N.Y. 2010)…………22

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 101 S. Ct. 1437, 67 L.
Ed. 2d 641 (1981) ..................................................................................................... 11-12

Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003) .....................................................9

Billingsley v. Citi Trends, Inc., 560 Fed.Appx. 914 (11th Cir. 2014) ..............................18

Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir. 2002).............................................14

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) .................................. 7-8

Carnegie v. H&R Block, Inc., 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999) ...........................18

Damato v. Time Warner Cable, Inc., No. 13-CV-994 ARR RML, 2013 WL 3968765
(E.D.N.Y. July 31, 2013) ...............................................................................................16

Dedon GmbH v. Janus et Cie, No. 10 CIV. 04541 CM, 2010 WL 4227309 (S.D.N.Y.
Oct. 19, 2010) ................................................................................................................8

Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470 (S.D.N.Y. 2010).........22

E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458
(E.D.N.Y. 2006).............................................................................................................14

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)…………………..2

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010) ...................................7

Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)........................................................................................................13

Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).............16

Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527 (E.D. Va. 1999)............................20

Hines v. Overstock.com, Inc., 380 F. App'x 22 (2d Cir. 2010) ...........................................9

Holick v. Cellular Sales of New York, LLC, 802 F.3d 391 (2d Cir. 2015).......................19

In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237 (S.D.N.Y. 2005).....16

In re Sch. Asbestos Litig., 842 F.2d 671 (3d Cir. 1998)....................................................16

Les Telecommunications d'Haiti S.A.M. v. Cine, No. 13-CV-6462, 2014 WL 2655451(E.D.N.Y. June 13, 2014) ................................................................................8

Long v. Fid. Water Sys., Inc., No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May 26, 2000) ............................................................................................................21

Manning v. Boston Med. Ctr. Corp., 725 F.3d 34 (1st Cir. 2013)....................................12

McLean v. Garage Mgmt. Corp., No. 10 CIV. 3950 DLC, 2011 WL 1143003 (S.D.N.Y. Mar. 29, 2011) ............................................................................................10

Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44 (2d Cir. 2000) ...........................................9

Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) ................................19

Nesbitt v. FCNH, Inc., No. 14-1502, 2016 WL 53816 (10th Cir. Jan. 5, 2016)...............14

O'Connor v. Uber; No. 13-cv-03826, 2013 WL6407583 (N.D. Cal. Dec. 23, 2015) .......18

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 660 N.E.2d 415 (1995).........................................................................................................9

Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924 (2d Cir. 1990)...................................................................................................19

Ralph Oldsmobile, Inc. v. General Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ..................................................................................16

<u>Rogers v. New York Univ.</u>, 220 F.3d 73 (2d Cir. 2000) ...................................................10

<u>Russell v. Citigroup, Inc</u>, 748 F.3d 655 (6th Cir. 2014) ...................................................20

<u>Sec. Watch, Inc. v. Sentinel Sys., Inc.</u>, 176 F.3d 369 (6th Cir. 1999) ..............................20

<u>Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.</u>,
198 F.3d 88 (2d Cir. 1999).................................................................................................22

<u>Telenor Mobile Commc'ns AS v. Storm LLC</u>, 584 F.3d 396 (2d Cir. 2009).....................8

<u>Thomas v. Carnival Corp.</u>, 573 F.3d 1113 (11th Cir. 2009)..............................................20

<u>Tran v. Alphonse Hotel</u>, 54 F.3d 115 (2d Cir. 1995)........................................................12

<u>Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund</u>,
No. 07 CIV. 1951 (WCC), 2007 WL 4267632 (S.D.N.Y. Nov. 30, 2007) .......................8

<u>Wu v. Pearson Educ. Inc.</u>, Nos. 09 Civ. 6557(RJH)(JCF), 10 Civ. 6537 (RJH)(JCF), 2011
WL 2314778 (S.D.N.Y. Jun. 7, 2011) ..............................................................................17

**OTHER AUTHORITIES:**
Fair Labor Standards Act of 1938, as amended
     29 U.S.C. § 216(b) ....................................................................... passim
Wage Parity Act
     NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c........4
Federal Arbitration Act
     9 U.S.C. § 4.......................................................................................................7
Federal Rules
     Rule 23 .............................................................................................................16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BETHANIA RODRIGUEZ,                             :         ECF
Individually and on Behalf of All Other         :         15 Civ. 9817(VEC)
Persons Similarly Situated,                     :
                                                :
                          Plaintiff,            :
                                                :
        -against-                               :
                                                :
NEW YORK FOUNDATION FOR SENIOR                  :
CITIZENS HOME ATTENDANT SERVICES,INC.,          :
LINDA R. HOFFMAN and JOHN DOES #1-10,           :
                                                :
                          Defendants.           :
----------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO**

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION**


**PRELIMINARY STATEMENT**

In its motion to compel arbitration, Defendants NEW YORK FOUNDATION FOR

SENIOR CITIZENS HOME ATTENDANT SERVICES, INC. ("NY FOUNDATION") and

LINDA R. HOFFMAN (together "Defendants" or "Defendant") asks the Court to enforce an

arbitration provision in an agreement that has not yet come into effect, that is unenforceable and

also does not apply to Plaintiffs' claims.  The Court should therefore deny Defendants' motion.

Plaintiff Bethanie Rodriguez ("Plaintiff") is a home care aide employed by Defendant.

Plaintiff and Defendant's other home care aides regularly worked more than 40 hours a week and

were not paid time and one half their regular rates, as required by the federal Fair Labor

Standards Act. They were generally paid between $10 and $11.05 per hour for the hours for

which they received credit.  Plaintiff and the other home health care aides also often worked

multiple daily shifts caring for separate clients in the same day and were not paid for their time traveling between the clients' locations.

Plaintiff filed this action in the United States District Court for the Southern District of New York on December 16, 2016.  Defendants moved to compel arbitration based on an alleged 2015 Memorandum of Understanding (the "2015 MOA").  The MOA referenced by Defendants is signed only by the Defendant NY FOUNDATION on December 24, 2015 and indicates that it is "subject to ratification by the Union and its membership and by the Board of Directors of the Employer."  There is no evidence in the record that the Union signed the MOA or that the MOA was ratified by the Union and its membership or by the Board of Directors of the Employer. Furthermore, the contract is subject to approval by the New York City Human Resources Administration ("NYCHRA"), and there is no evidence that the NYCHRA has approved the 2015 MOA. Accordingly, there is no evidence in the record that the 2015 MOA is a binding agreement.

A court asked to stay litigation pending compulsory arbitration must engage in a four-step inquiry: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.  Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).

This Court should deny Defendant's motion for the following reasons.  *First*, the 2015 MOA requires as conditions to its formation ratification by the Union and its members and by the Board of Directors of Defendant as well as approval from the New York City Human

Resources Administration ("HRA").  Defendant has provided no evidence that these conditions have been met and that a valid contact has even been formed.  The agreement is therefore unenforceable.

*Second*, the language of the Collective Bargaining Agreement absent the 2015 MOA does not provide a basis to compel arbitration.

*Third*, even if Defendant ultimately establishes ratification and approval of the 2015 MOA, the 2015 MOA is unenforceable for three reasons.  First, binding Supreme Court and Second Circuit precedent prevents a court from enforcing an arbitration provision in a collective bargaining agreement that waives the judicial forum for wage claims.  Second, Plaintiffs' claims would not be effectively vindicated if Plaintiffs were forced to use the MOA arbitration provision because of the prohibitively high costs of mediation and arbitration.  Third, since this case was initiated as a class action lawsuit, Defendant's attempts to communicate with the class members through the unsupervised union ratification process are improper and render the arbitration provision unenforceable.

*Finally*, the arbitration provision in the 2015 MOA is prospective and does not short-circuit this lawsuit, which was filed before the arbitration provision came into effect.  The language of the arbitration provision and the 2015 MOA as a whole indicates that Defendant and the Union always intended for the arbitration provision to be prospective only.  For these reasons, the Court should deny Defendant's motion to compel arbitration.

## STATEMENT OF FACTS

### A. Factual Background of This Case and Plaintiffs' Initial Complaint.

Plaintiffs are home care aides employed by Defendant to care for disabled and elderly individuals in and around New York City.  (See, Plaintiffs' Second Amended Complaint attached as **Exhibit A** to the DiGia Declaration).  They worked more than 40 hours a week and were not paid time and one half their regular wage as required by the Fair Labor Standard Act and also worked for more than one client in a day and were not paid for their time traveling between the client's locations.

In response to these systematic violations, on December 16, 2015, Plaintiffs brought this action individually and on behalf of approximately 1,000 home care aides against Defendants for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") based on Defendant's failure to pay minimum and overtime wages, violations of the Wage Parity Act for Defendant's failure to pay minimum wages set by the Wage Parity Act, and violations of the Wage Theft Prevention Act for failure to provide proper wage disclosures.  Id.  Because Defendant entered into contracts with New York City requiring it to pay Plaintiffs in accordance with the Wage Parity Act, and Defendant failed to pay Plaintiffs in accordance with those laws, Plaintiffs also asserted claims as third-party beneficiaries of those contracts.  Id.

### B. The Dispute Resolution Procedure Created by the 2001 Collective Bargaining Agreement and the Alleged 2015 Memorandum of Understanding Amending the CBA

On and about August 8, 2001, Defendant NY FOUNDATION and 1199/SEIU New York's Health and Human Service Union (the "Union") entered into a Collective Bargaining Agreement (the "2001 CBA").  See Exh. B to the DiGia Declaration.  The 2001 CBA created a Grievance and Arbitration Procedure governing "any dispute between the Union (on its behalf

and/or on behalf of any Employee) with the Employer *involving the proper application, interpretation, or compliance with the specific written provisions of the [CBA]* based on facts and circumstances occurring during the term of [CBA]."  Id., CBA, Article XXV, ¶1 (emphasis added).  The 2001 CBA also sets up a specific grievance procedure, including mandatory arbitration, with which the Union must comply if it wishes to bring a claim under the 2001 CBA. The Grievance and Arbitration Procedure does not require any employee to file a grievance for any claim not arising out of the 2001 CBA.

Subsequently, on and about December 24, 2015, Defendant NY FOUNDATION signed a Memorandum of Agreement ("2015 MOA") to revise the CBA and revise its arbitration provisions.  See Exh. C to the DiGia Declaration. The 2015 MOA submitted by Defendants is not signed by the Union.   Pursuant to the 2015 MOA, to bring a claim for violation of one of the covered statutes, a worker must file a grievance within the statute of limitations applicable to the covered statutes.  If the grievance is not resolved at that initial stage, the Union or the individual worker must request mandatory mediation before Martin F. Sheinman.  Id.. p. 9, ¶2.  If mediation fails, the individual or the Union must make a demand for binding arbitration within 30 days of the conclusion of the mediation.  Martin F. Sheinman is also the designated arbitrator. Id., pp. 9-10, ¶3.  If the Union refuses to pursue a grievance to the mediation or arbitration stage, the individual worker may do so but he or she must do so individually; a worker is explicitly prohibited from proceeding on a class or collective action basis.  Id. In addition, the individual worker must bear half of the mediator's and arbitrator's fees, although the employee may be reimbursed for the fees of the arbitrator if the arbitrator finds that Defendant violated any of the Covered Statutes.  Id., p. 10, ¶4.

By its terms, the 2015 MOA is effective as of December 1, 2015 subject to "ratification by the Union and its membership and by the Board of Directors of [Defendant]" and "approval by the New York City Human Resources Administration."  See Exh. C to the DiGia Declaration; pp. 10, ¶¶1-2.  Defendants' have submitted no proof that (a) the 2015 MOA to date has been signed by the Union, (b) has been ratified by the Union membership, or (c)  has been approved by HRA.

## ARGUMENT

**I.    ARBITRATION CANNOT BE COMPELLED BECAUSE THERE IS NO BINDING CONTRACT TO ARBITRATE BECAUSE (A) THE 2015 MOA HAS NOT BEEN SIGNED BY THE UNION,  (B) HAS NOT BEEN RATIFIED BY THE UNION'S MEMBERSHIP, (C) HAS NOT BEEN RATIFIED BY THE EMPLOYER'S BOARD OF DIRECTORS, AND (D) HAS NOT BEEN APPROVED BY THE NEW YORK CITY HUMAN RESOURCES ADMINISTRATION**

Arbitration cannot be compelled because there is no binding contract to arbitrate because the 2015 MOA (a) has not been signed by the Union and (b) has not been ratified by the Union's membership, (c) has not been ratified by the Employer's Board of Directors, and (d) has not been approved by the New York City Human Resources Administration.

### A.  The 2015 MOA submitted by Defendants is not signed by the Union.

The 2015 MOA submitted by Defendants as Exhibit C to the DiGia Declaration is not signed by the Union and was only unilaterally signed by the Employer on December 24, 2015, after this action had already been filed.  Accordingly, the submitted 2015 MOA is not a signed, binding agreement.

**B. Defendant Has Not Proven That the 2015 MOA Has Been Ratified by "the Union and its membership and by the Board of Directors of the Employer."**

The 2015 MOA states that as a condition precedent to its existence, it must be ratified by "the Union and its membership and by the Board of Directors of the Employer." See Exhibit C to the DiGia Declaration at p. 10.  Defendants have not submitted any evidence that the 2015 MOA has in fact been ratified by the Union, its members and the Employer's Board of Directors. Since Defendants' have not shown that the 2015 MOA has been ratified, the Court must presume that it has not been ratified and thus is not yet a binding agreement.

**C. The 2015 MOA has not been approved by the New York City Human Resource Administration.**

The 2015 MOA states that as a condition precedent it "is also subject to approval by the New York City Human Resources Administration with respect to employees working on HRA cases." <u>See</u> Exhibit C to the DiGia Declaration at p. 10.  Defendants have not submitted any evidence that the 2015 MOA has in fact been approved by the New York City Human Resource Administration or that the Plaintiff did not ever work on HRA cases during her employment, and accordingly, the Court must presume that the 2015 MOA has not been approved and thus is not yet a binding agreement.

**D. Because Defendants have not Met their Burden to Show that a Binding Arbitration Agreement has been Formed, The Court Must Deny Their Motion to Compel Arbitration**

Before compelling arbitration, the FAA requires the Court to be "satisfied that the making of an agreement to arbitrate . . . is not in issue."  9 U.S.C. §4.  Absent an agreement to arbitrate the Court has no basis to compel arbitration.  <u>Granite Rock Co. v. Int'l Bhd. of Teamsters</u>, 561 U.S. 287, 301 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.") <u>citing</u> <u>Buckeye</u>

Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n. 1 (2006); Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund, No. 07 CIV. 1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

A party may challenge the formation of an arbitration agreement by challenging the formation of the contract containing the arbitration clause. Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 n. 5 (2d Cir. 2009) (noting that "questions about whether a contract was ever made . . . are presumptively to be decided by the court even *without* a specific challenge to the agreement to arbitrate") (emphasis in original); Granite, 561 U.S. at 301 (court could decide challenge to CBA based on ratification date). As one judge in this District noted, the "Supreme Court has made it crystal clear that whenever a party contests the existence or the enforceability of an arbitration agreement, the court must resolve the disagreement." Dedon GmbH v. Janus et Cie, No. 10 CIV. 04541 CM, 2010 WL 4227309, at *7 (S.D.N.Y. Oct. 19, 2010) (McMahon, J.) aff'd, 411 F. App'x 361 (2d Cir. 2011); Les Telecommunications d'Haiti S.A.M. v. Cine, No. 13-CV-6462, 2014 WL 2655451, at *6 (E.D.N.Y. June 13, 2014) (noting that the "enforceability of the parties' purported agreement to arbitrate hinges, in the first place, on the validity of the [underlying agreement].") When a party challenges the existence of an enforceable arbitration provision, the strong federal presumption of arbitrability does not apply. Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011) (noting that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.")

The 2015 MOA is not effective because the parties have not satisfied the conditions precedent to its formation. Because an agreement to arbitrate is a contract, it is governed by

"state-law principles."  Adams, 433 F.3d at 227.  Under New York law, "when there is a condition precedent to the formation or existence of the contract itself *no contract arises* unless and until the condition occurs."  Id. (quotations omitted but emphasis in the original) citing Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418 (1995).  Adams is particularly instructive.  In Adams, the defendant and a particular union entered into a CBA that by its own terms did not come into effect until two conditions precedent had been met.  The Second Circuit held that the CBA had not yet been formed because the conditions precedent had not been satisfied.  It further held that the district court's denial of the motion to compel was warranted.

Here, the 2015 MOA will be effective only after it has been (1) ratified by the Union and its membership; and (2) ratified by the Defendant's Board of Directors, and (3) approved by the New York City Human Resources Administration."  Exh. C to the DiGia Dec., pp. 10-11, ¶¶1-2. A party moving to compel arbitration has the burden to establish that an agreement exists, and in determining the motion, the court applies a standard similar to that applicable for a motion for summary judgment.  Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (party moving to compel arbitration bears the burden of establishing that a CBA has been formed) citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).  Defendant, therefore, bears the burden of establishing that the 2015 MOA has been formed and that all three conditions precedent have been met. Defendant, however, has failed to provide any evidence that each of the three conditions has been met. Accordingly, the Court should deny Defendant's motion to compel based on the 2015 MOA.[1]

---

[1] In the event the Court is unsure whether the 2015 MOA has been formed, it should hold a bench trial under 9 U.S.C.A. § 4 (West) to determine whether Defendant and the Union have complied with the 2015 MOA's ratification requirements and HRA has approved it.  Barbieri v. K-Sea Transp. Corp., No. 105CV04950-EVN-MDG, 2006 WL 3751215, at *9 (E.D.N.Y. Dec. 19, 2006)

Because the 2015 MOA has not been ratified and has not yet been approved by the New York City Human Resource Administration, it has not yet been formed, and therefore the Court must reject Defendants' motion to compel arbitration. Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005).

### E. The Collective Bargaining Agreement Absent the 2015 MOA Does Not Constitute an Agreement to Arbitrate

A collective bargaining agreement ("CBA") cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement is clear and unmistakable that the parties intended to arbitrate such individual claims. Rogers v. New York Univ., 220 F.3d 73, 76 (2d Cir. 2000) abrogated on other grounds by 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009). A waiver is only clear and unmistakable when either (1) the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes. Id.

The 2001 CBA attached as Exh. A to the Gia Declaration specifically states on p. 20-21 that grievances to be arbitrated are defined as disputes between the Union and the Employer "involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement." And that "An Employee (or Employees) does not (do not) have the right to request arbitration." The 2001 CBA therefore does not require any of Plaintiffs' causes of action, which do not include causes of action for breach of the CBA, to be arbitrated. McLean v. Garage Mgmt. Corp., No. 10 CIV. 3950 DLC, 2011 WL 1143003, at *5 (S.D.N.Y. Mar. 29, 2011) (Cote, J.) (declining to compel arbitration when "[t]he CBA does not provide that all federal causes of action arising from the plaintiffs employment will be subject to arbitration,

nor does it explicitly incorporate the requirements of the FLSA or NYLL.") (internal quotations omitted). See Bledar Gani v. Guardian Service Iindustries Inc. et al., 2011 U.S. Dist. LEXIS 4353 at *4 (Jan. 13, 2011 S.D.N.Y.)(J. McMahon)("the United States Supreme Court has specifically held that employees who have submitted their wage disputes to grievance arbitration proceedings under collective bargaining agreements may also file actions under the FLSA, so the pendency of the arbitration does not bar potential class members from participating as plaintiffs in this action. Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 745, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981).")

## II.   EVEN IF THE 2015 MOA IS EVENTUALLY RATIFIED, IT DOES NOT REQUIRE PLAINTIFF AND SIMILAR EMPLOYEES TO ARBITRATE THEIR CLAIMS

If the 2015 MOA is, eventually, ratified, the Court should decline to enforce it for four independent reasons:  First, binding precedent prevents a union from waiving an employee's right to proceed with his wage claims in court.  Second, the 2015 MOA imposes significant costs on Plaintiffs and prevents them from effectively vindicating their wage claims.  Third, Defendant's attempt to have the Union membership ratify the draconian arbitration provision constitutes an improper communication with potential class members that warrants finding the arbitration provision unenforceable.

### A. Binding Precedent Precludes a CBA from Waiving an Employee's Right to Assert FLSA Claims in Federal Court.

Even if the Court finds that the 2015 MOA is ultimately signed and ratified and becomes enforceable, the Court should decline to enforce the arbitration clause as it applies to Plaintiff's claims in this suit because Plaintiffs cannot be forced by a CBA to arbitrate their wage claims. As the Second Circuit has noted, employees may assert their wage claims in court even if a collective bargaining agreement purports to force them to arbitrate.

In <u>Tran v. Alphonse Hotel</u>, 54 F.3d 115 (2d Cir. 1995), the Second Circuit reversed a district court decision requiring that a plaintiff arbitrate his FLSA claims.  The Second Circuit followed the Supreme Court's decision in <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 745, 101 S. Ct. 1437, 1447, 67 L. Ed. 2d 641 (1981), which explicitly held that FLSA claims "are not waivable" because Congress intended "to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum." <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 745, 101 S. Ct. 1437, 1447, 67 L. Ed. 2d 641 (1981).  Other courts since <u>Tran</u> have held similarly. <u>Alderman v. 21 Club Inc.</u>, 733 F. Supp. 2d 461, 470 (S.D.N.Y. 2010)(Griesa, J.) ("Courts have held that plaintiffs covered by a collective bargaining agreement that required arbitration of any disputes concerning the interpretation or application of the agreement are entitled to pursue their individual statutory rights under the FLSA in federal court."); <u>Manning v. Boston Med. Ctr. Corp.</u>, 725 F.3d 34, 52 (1st Cir. 2013) (noting that "the state of the law is somewhat unsettled as to whether a FLSA claim may *ever* be waived by a CBA") (emphasis in original).  In addition, in <u>Tran</u>, the Second Circuit noted that as "the wage hour claims of plaintiff are concerned, plaintiff was not required to seek grievance and arbitration . . . ." <u>Tran</u>, 54 F.3d at 118.  This outcome comports with the special status afforded to wage-and-hour claims.  <u>See, e.g.</u>, <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 207 (2d Cir. 2015) (finding that the FLSA is a uniquely protective statute that has as its primary remedial purposes "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees") <u>citing</u> <u>Brooklyn Sav. Bank v. O'Niel</u>, 234 U.S. 697, 706-707 (1945).  Because all of Plaintiffs' claims are wage-and-hour claims, the Court should hold that Plaintiffs need not arbitrate their claims.

Defendants reliance on <u>14 Penn Plaza LLC v. Pyett</u>, 556 U.S. 247, 257 (2009) is misplaced as this case related to claims under the The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.S. § 621 et seq., in contrast to the case at hand which involves the FLSA and the right to minimum wage and overtime, whose legislative history is different and supports an employee's right to go to court to obtain justice.  Furthermore, the decision in <u>Chan v. Chinese-American Planning Council</u>, 15-CV-9605 (S.D.N.Y. Feb. 3, 2016) is not applicable because the decision is not binding on this court and because the decision was based on a 2015 MOA which was signed by both the Union and the Employer, and not by just the Employer as in this action.

## B. The 2015 MOA Precludes Plaintiffs From Effectively Vindicating Their Rights Under the FLSA and NYLL and its Arbitration Provision Should not be Enforced.

In the event the Court declines to adopt the reasoning in <u>Tran</u>, it should still hold that the 2015 MOA's arbitration provision is unenforceable because it prevents Plaintiffs from protecting their rights.  A court should decline to enforce an arbitration agreement that effectively prevents an employee from vindicating his rights.  <u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 90, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) (noting that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum."); <u>Am. Exp. Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 2310-11, 186 L. Ed. 2d 417 (2013) (the effective vindication doctrine "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable").

Here, the 2015 MOA requires that Plaintiffs split with Defendant the costs of the mediation and arbitration.  Although the Second Circuit has not clarified the scope of the "effective vindication" doctrine, two Circuits of the Court of Appeals have determined that a

mandatory fee splitting provision renders an arbitration agreement unenforceable. Nesbitt v. FCNH, Inc., No. 14-1502, 2016 WL 53816 (10th Cir. Jan. 5, 2016) (in FLSA case holding that fee splitting provision rendered arbitration clause unenforceable); Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) (same in Title VII case); see also Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002) (remanding case to district court to determine if due to mandatory fee splitting provision "resort to arbitration would deny [the plaintiff] a forum to vindicate her statutory rights.")

Given Plaintiffs' limited resources, the cost-splitting provision effectively prevents them from vindicating their claims. Plaintiffs are extremely low wage workers, generally earning between $300 and $450 a week and generally incurring household expenses that exceed their earnings. Mr. Scheinman, the designated mediator/arbitrator, charges a minimum of $6,050 for a single day of mandatory mediation. If mediation is unsuccessful, Plaintiffs will have to attend an arbitration before Mr. Scheinman for which he charges a minimum of $2,700 per day. At a minimum, then, Mr. Scheinman will charge no less than $8,750 for the mediation and a single day arbitration, of which each Plaintiff would have to pay $4,375 to pursue her claim. Taubenfeld Decl. ¶¶5-6. These costs make it virtually impossible for Plaintiffs to arbitrate a claim, especially compared to the $400 filing fee that Plaintiffs paid to initiate this case. Given Plaintiffs' minimal earnings, a $4,375 fee would exceed multiple months of pay, and Plaintiffs would likely opt to not pursue their claims rather incur such prohibitively high costs. E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (declining to compel arbitration because the $6,000 to $11,250 in "costs would be prohibitively expensive in comparison to the filing fee she is required to pay to commence a proceeding in federal court"); Morrison, 317 F.3d at 669 (holding the $1,622 filing fee cost prohibitive);

Nesbitt, 2016 WL 53816 (holding prohibitive arbitration costs between "$2,320.50 and $12,487.50"). Nor can Plaintiffs pool their resources to pay the mediator/arbitrator fees by filing a request for class arbitration because the arbitration clause prohibits Plaintiffs from arbitrating collectively or as a class. Exh. C to the DiGia Dec., p. 10, ¶4. Each individual worker must file her own demand for mediation and arbitration and each must pay a minimum of $4,375 to have his or her claim considered.

It does not matter that the 2015 MOA permits Plaintiffs to recover some of their costs of the arbitration if they are successful. First, the 2015 MOA appears to only permit the arbitrator to require that Defendant pay "the fees and costs of the arbitrator." Exh. C to the DiGia Dec., p. 10, ¶4. The 2015 MOA is ambiguous as to whether the arbitrator may award to Plaintiffs their attorneys' fees, which the FLSA expressly provides.[2]  29 U.S.C. § 216(b). Arbitration agreements that deprive plaintiffs of substantive rights cannot be enforced. Morrison, 317 F.3d at 672 (arbitration agreement capping damages under Title VII unenforceable); Nesbitt, 2016 WL 53816, at *7 (arbitration agreement unenforceable since it was "ambiguous regarding the availability of a fee award for [plaintiff]" because the arbitration clause was internally inconsistent as whether fees were awardable). In addition, the 2015 MOA does not permit Plaintiffs to recover mediation costs, which will cost each Plaintiff more than $3,000. Finally, the arbitration provision does not state when the mediation and arbitration costs must be paid, and if Plaintiffs are required to make these payments before the mediation and arbitration begin, they will not be able to afford to pay these expenses up front. As a result of these restrictions,

---

[2] Although in Paragraph 1, the 2015 MOA states that the arbitrator "shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees," in paragraph 4, the paragraph that expressly authorizes Plaintiffs to individually arbitrate their claims, only permits the arbitrator to award "the fees and costs of the arbitrator."

Plaintiffs are unlikely to risk their "scarce resources in the hopes of an uncertain benefit" and therefore the arbitration provision is not enforceable.  Morrison, 317 F.3d at 670.

Accordingly, the Court should find that 2015 MOA's arbitration clause is unenforceable because it effectively prevents Plaintiffs from vindicating their rights.[3]

### C. Defendant's Communications Through the Union with Potential Class Members Render the Arbitration Provision of the 2015 MOA Unenforceable.

Even if the 2015 MOA is ultimately ratified, the arbitration provision should also be held unenforceable because it would be the product of improper communications with Plaintiffs and other putative class members.

Rule 23 of the Federal Rules of Civil Procedure grants the Court broad supervisory authority in class action suits.  Fed. R. Civ. P. 23.  That authority has been interpreted to include supervision over a defendant's communications with putative class members.  See, Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981);  In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005); Ralph Oldsmobile, Inc. v. General Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at  (S.D.N.Y. Sept. 7, 2001) ("Although Gulf Oil concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well.").  While not all communications must undergo judicial scrutiny, "[c]ommunications that threaten the choice of remedies available to class members are subject to a district court's supervision."  In re Currency Conversion Fee Antitrust Litig., 361 F.Supp. 2d at 252 citing In re Sch. Asbestos Litig., 842 F.2d 671, 683 (3d Cir. 1998); see also Agerbrink v. Model Service LLC, No. 14 Civ. 7841(JPO)(JCF), 2015 WL

---

[3] The effective vindication doctrine applies to both federal and state causes of action.  Damato v. Time Warner Cable, Inc., No. 13-CV-994 ARR RML, 2013 WL 3968765, at *10 (E.D.N.Y. July 31, 2013) (citing cases).

6473005, at *3 (S.D.N.Y. Oct. 27, 2015) ("judicial intervention is warranted when communications pose a 'serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally'"). "Indeed, a district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." Id. at 252-253. Inherently coercive communications – defined by courts as communications that have the purpose of altering the status of pending litigation, interfering with participation by potential class members, or misleading putative class members by failing to reveal how some proposed transaction might affect members' rights in litigation – will be found to be improper without judicial authorization and may result in an arbitration agreement being held unenforceable. Id. at 253; Wu v. Pearson Educ. Inc., Nos. 09 Civ. 6557(RJH)(JCF), 10 Civ. 6537 (RJH)(JCF), 2011 WL 2314778, at *6 (S.D.N.Y. Jun. 7, 2011) (examining cases).

In this case, Defendant has deliberately attempted to thwart Rule 23's protections by using the collective bargaining process as a shield against judicial scrutiny. By integrating the arbitration requirement into a memorandum of agreement with the Union, Defendant seeks to bind putative class members to a mandatory arbitration process that clearly implicates the statutory claims asserted in this case. Fully aware that the arbitration provisions of the 2015 MOA would directly affect class members' rights in the pending litigation if interpreted to require class members to submit to arbitration any portion of their grievances relating to Defendant's violations of the federal and state labor laws, Defendant actively engaged in unsupervised negotiations with the Union for the express purpose of depriving class members of their statutory rights. The suspicious nature of NY FOUNDATION's actions is confirmed by the

fact that it has sought to apply retroactively the dispute resolution procedures articulated in the 2015 MOA to Plaintiffs' claims – before the MOA has even been properly executed and formed.

Courts have declined to enforce arbitration provisions when the provisions were obtained during ongoing litigation and involved unsupervised communications with class members.  See, In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d at 253.  Here, Defendants have masked their communications by hiding behind the Union and its process.  However, the arbitration agreement constitutes the type of unsupervised, inherently coercive communication that should render the arbitration agreement unenforceable.  A finding of unenforceability in this case would be consistent with decisions from courts around the country refusing to compel arbitration because of improper communications to putative class members.  See, e.g., Billingsley v. Citi Trends, Inc., 560 Fed. Appx. 914 (11th Cir. 2014) (affirming denial of motion to compel arbitration where arbitration agreement was imposed after filing but before certification of FLSA collective action); Jimenez v. Menzies Aviation, Case No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal. 2015) (holding that proposed ADR agreement sent to putative class members was unenforceable because it was an improper communication with class members); O'Connor v. Uber; No. 13-cv-03826, 2013 WL6407583 (N.D. Cal. Dec. 23, 2015) (discussing arbitration agreements that fail to advise putative class members about the lawsuit or did not offer a reasonable opportunity to opt out);  Carnegie v. H&R Block, Inc., 687 N.Y.S.2d 528, 531 (N.Y. Sup. Ct. 1999) (holding that communications that are "coercive, misleading, or an attempt to affect a class member's decision to participate in the litigation" must not be permitted).

NY Foundation has intentionally attempted to bind putative class members to a modified CBA that it believes would strip those class members of their right to a day in court on the

statutory claims asserted in this case.  Accordingly, the Court should find that the arbitration clause of the 2015 MOA is unenforceable because it was obtained by Defendant during the pendency of this litigation and not under this Court's supervision.

### III.   EVEN IF THE 2015 MOA IS RATIFIED AND IS ENFORCEABLE, IT ONLY APPLIES TO CLAIMS ARISING ON OR AFTER DECEMBER 1, 2015.

#### A.   The 2015 MOA is Prospective.

Even if, at some point in the future the 2015 MOA were signed and ratified, and this Court were to determine that it is enforceable, the MOA on its face only applies to violations arising on or after December 1, 2015, the effective date of the MOA.  Accordingly, any order compelling arbitration must be limited to claims arising on or after December 1, 2015 and does not apply to the Plaintiff's claims which arose during her employment which ended on June 30, 2015, months before December 1, 2015 and months before the Defendant even signed the 2015 MOA.

An arbitration clause of a new agreement applies to claims predating the agreement only if the arbitration clause "is susceptible of an interpretation that covers the asserted dispute." Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 928 (2d Cir. 1990).  In determining the scope of arbitration agreement, a court should review the "contract's language, the timing of its execution, and the conduct of the parties."  Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 398 (2d Cir. 2015) (internal quotations omitted) citing Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49 (2d Cir. 2000).

Here the language of the 2015 MOA does not indicate that it is retroactive.  In fact it specifically states that it is only effective starting on December 1, 2015 indicating it covers claims accruing after that date.  Since the parties' intent was not for the arbitration clause to be retroactive, the Court should find that the clause is not retroactive.

The Union's interpretation is fully supported by the language of the MOA.  The 2015 MOA does not explicitly state that it covers claims predating the 2015 MOA even though Defendant and the Union could easily have included such language.  A court "can glean intent not only from what *is* said but what *is not* said."  Thomas v. Carnival Corp., 573 F.3d 1113, 1119 (11th Cir. 2009) (emphasis added).  Accordingly, the Court can infer from the 2015 MOA's arbitration clause's silence on retroactivity that it is not retroactive.  Id. (holding that an arbitration clause was not retroactive because "if the parties had intended retroactivity, they would have explicitly said so."); Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 374 (6th Cir. 1999) ("Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so explicitly.");  Russell v. Citigroup, Inc, 748 F.3d 655, 680 (6th Cir. 2014) (noting that the "common expectations of the parties" was that the arbitration agreement would apply prospectively);  Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527, 535 (E.D. Va. 1999) (holding that an employer may not "insulate itself from pre-existing claims" without saying "so in explicit terms").

Furthermore, the language of the arbitration clause in the 2015 MOA indicates that it applies prospectively only.  Crucially, the preamble of the arbitration clause notes that the arbitration clause's purpose "is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes" and "the uniform administration and interpretation of *this Agreement* in connection with federal, state, and local wage-hour and wage parity statutes . . ."  Exh. C to the DiGia Dec., p. 9, ¶ 1 (emphasis added).  Ensuring "compliance with . . . law[s] and . . . [statutes]" and "uniform administration and interpretation of [an] agreement" are plainly future looking terms.  It makes little sense to attempt to ensure *past* compliance with laws.  In addition, it is impossible to ensure past uniform administration and interpretation of an

agreement that only became effective on December 1, 2015.   The terminology used in the prefatory sentences of the arbitration clause is therefore clearly forward-looking and does not indicate any intention for the clause to apply retroactively.

The main text of the arbitration clause also indicates prospective application only.   The arbitration clause states that it covers "all claims . . . *asserting* violations of or *arising* under . . . ." Exh. C to the DiGia Dec., p. 9, ¶1 (emphasis added).   Terms such as "asserting" and "arising" are present tense and indicate that the arbitration clause only covers future claims.   Russell, 748 F.3d at 679 ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin—that arise—in the present or future."); Hendric, 50 F. Supp. 2d at 535 ("arises from" denotes future claims). Given the arbitration clause's use of forward-looking terminology, the clause is clearly not retroactive.

Similarly, the 2015 MOA explicitly states that it is effective as of December 1, 2015 and the rest of the 2015 MOA is plainly prospective only.   Absent a clear statement to the contrary, a party is not obligated "to arbitrate acts that occurred before the effective date of that agreement." Long v. Fid. Water Sys., Inc., No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000).   Accordingly, because the 2015 MOA's effective date is December 1, 2015, its arbitration clause does not cover claims accruing prior to that date.

Finally, reading the arbitration provision as retroactive would effectively wipe out an entire year of Plaintiffs' and the classes' claims.   By its terms, the arbitration agreement requires workers to file a grievance within the statute of limitations of the covered statutes.   Even if the arbitration provision were ratified tomorrow, and all class members filed individual grievances immediately, the furthest back their claims could go would be April 13, 2010.   But the claims of

the class in this action are tolled back to December 16, 2009.   It is plainly unreasonable to read the arbitration agreement in a way that wipes out currently viable claims as such a reading would render the agreement facially unenforceable.   Accordingly, the only reasonable reading of the arbitration agreement is that it is prospective in effect only.

### B.    Defendant's Cases Are Not on Point.

The cases cited by Defendant do not change this analysis.   The retroactivity analysis in Arrigo v. Blue Fish Commodities, Inc., is dicta because the plaintiff had waived his claim that the arbitration agreement was not retroactive.  408 F. App'x 480, 481 (2d Cir. 2011).  In addition, the arbitration clause in Arrigo did not contain a specific effective date, nor did it use language such as "arising" that indicates only prospective application.   Instead, the arbitration clause stated that the "Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim *arose* . . ." Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 301 (S.D.N.Y. 2010) (emphasis added) aff'd, 408 F. App'x 480 (2d Cir. 2011).   Finally, the arbitration clause in Arrigo did include language about "complying" with laws.

Similarly, the arbitration provision of the collective bargaining agreement in Duraku v. Tishman Speyer Properties, Inc. was broader than the clause in the 2015 MOA.   In Duraku, the clause stated that "*[w]henever* it is claimed that an employer has violated the no discrimination clause (including claims based in statute) of one of the CBAs, ... the matter *shall* be submitted to mediation." Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) (Cote, J.) (emphasis in original).   The use of the word "whenever" implies that any dispute must be mediated and arbitrated.   Finally, in Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999), the plaintiff brought the lawsuit years after signing the agreement containing the arbitration clause.   In this case, Plaintiffs initiated this

suit long before the Union and Defendant entered into the 2015 MOA.  In addition, unlike the 2015 MOA, the arbitration clause in Smith did not contain clear language indicating that the clause was prospective only.

Accordingly, the Court should hold that the 2015 MOA's arbitration clause is prospective only and deny Defendant's motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that Defendant's motion to compel arbitration and dismiss the complaint be denied in its entirety and that if Plaintiff's motion to compel arbitration is granted, that the Court stay the action pending the completion of arbitration.

Dated: New York, New York
        April 12, 2016

                        LAW OFFICE OF WILLIAM COUDERT RAND

                        _____
                        William Coudert Rand, Esq.
                        *Attorney for Plaintiff*, Individually and on
                        Behalf of All Persons Similarly Situated
                        501 Fifth Ave., 15th Floor
                        New York, New York 10017
                        Tel: (212) 286-1425
                        Fax: (646) 688-3078
                        Email: wcrand@wcrand.com