UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BETHANIA RODRIGUEZ, Individually and
on Behalf of All Other Persons Similarly Situated,

                                Plaintiff,

                  -against-

NEW YORK FOUNDATION FOR SENIOR
CITIZENS HOME ATTENDANT SERVICES, INC.,
LINDA R. HOFFMAN, and JOHN DOES #1-10,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15-CV-9817 (VEC)(HBP)

ELECTRONICALLY FILED

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION

EPSTEIN BECKER & GREEN, P.C.
*Attorneys for Defendants, New York*
*Foundation for Senior Citizens Home*
*Attendant Services, Inc. and Linda R.*
*Hoffman*
250 Park Avenue
New York, New York 10177
(212) 351-4500

Of Counsel:
    Kenneth W. DiGia
    Jeffrey H. Ruzal
    Adriana S. Kosovych

FIRM:35273697

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ......................................................................................... 1

POINT I
A VALID, BINDING AGREEMENT TO ARBITRATE EXISTS BETWEEN
HAS AND THE UNION ......................................................................... 1

    A.   The MOA Constitutes a Valid, Binding Agreement to Arbitrate. ..................... 1

Point II
PLAINTIFF IS REQUIRED TO ARBITRATE HER CLAIMS ................................... 4

    A.   The Parties Agreed to Arbitrate and Plaintiff's Claims Fall Within
        the Scope of the Arbitration Agreement. ........................................ 4

    B.   Plaintiff's Wage Claims are Arbitrable ............................................ 5

      1.   There Is No Evidence That Statutory Wage Claims Were Intended
          To Be Non-Artbitrable. ................................................. 5

      2.   Plaintiff Can Adequately Vindicate Her Rights In Arbitration. ............ 7

    C.   The MOA Applies to Plaintiff's Claims. ........................................ 8

CONCLUSION ...................................................................................... 10

FIRM:35273697

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*14 Penn Plaza LLC v. Pyett,*
    556 U.S. 247 (2009)...................................................................................6

*Adams v. Suozzi,*
    433 F.3d 220 (2d Cir. 2005).........................................................................3

*Alderman v. 21 Club Inc.,*
    733 F. Supp. 2d 461 (S.D.N.Y. 2010).........................................................6

*Am. Fed'n of Television & Radio Artists v. Inner City Broad. Corp.,*
    748 F.2d 884 (2d Cir. 1984)........................................................................4

*In re American Express Merchants' Litigation,*
    667 F.3d 204 (2d Cir. 2012).........................................................................7

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981)....................................................................................5

*Brown v. C. Volante Corp.,*
    194 F.3d 351 (2d Cir. 1999).........................................................................4

*Bynum v. Maplebear Inc.,*
    2016 U.S. Dist. LEXIS 17644 (E.D.N.Y. Feb. 12, 2016)............................6

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,*
    2016 U.S. Dist. LEXIS 73039 (S.D.N.Y. Feb. 3, 2016)....................*passim*

*Cheeks v. Freeport Pancake House, Inc.,*
    796 F.3d 199 (2d Cir. 2015).........................................................................6

*Citigroup, Inc. v. Abu Dhabi Investment Auth.,*
    776 F.3d 126 (2d Cir. 2015).......................................................................10

*Coenen v. R.W. Pressprich & Co.,*
    453 F. 2d 1209 (2d Cir. 1972)......................................................................8

*Duraku v. Tishman Speyer Props., Inc.,*
    714 F. Supp. 2d 470 (S.D.N.Y. 2010).........................................................9

*Duran v. J. Hass Grp., L.L.C.,*
    531 F. App'x 146 (2d Cir. 2013) ...............................................................10

iii

*Empire State Carpenters Welfare Annuity v. Conway Constr. of Ithaca, Inc.*,
  2010 U.S. Dist. LEXIS 15441 (E.D.N.Y. Feb. 19, 2010)..........................................................4

*Gen. Contractors Ass'n v. Local No. 46, Metallic Lathers Union & Reinforcing
  Iron Workers*,
  1990 U.S. Dist. LEXIS 10223 (S.D.N.Y. Aug. 1, 1990)..........................................................3

*La Barbera v. ASTC Labs. Inc.*,
  752 F. Supp. 2d 263 (E.D.N.Y. 2010) .......................................................................................4

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013).........................................................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..........................................................................................................................9

*Moton v. Maplebear Inc.*,
  2016 U.S. Dist. LEXIS 17643 (S.D.N.Y. Feb. 9, 2016) .........................................................5

*Oldroyd v. Elmira Sav. Bank*,
  134 F.3d 72 (2d Cir. 1998)...........................................................................................................5

*Polit v. Global Foods Int'l Corp.*,
  2015 U.S. Dist. LEXIS 51686 (S.D.N.Y. Apr. 20, 2015).......................................................5

*Raniere v. Citigroup Inc.*,
  533 F. App'x 11 (2d Circ. Aug. 12, 2013)..................................................................................7

*Reynolds v. de Silva*,
  2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010).......................................................5

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999)...........................................................................................................8

*Sutherland v. Ernst & Young LLP*,
  726 F.3d 290 (2d Cir. 2013).....................................................................................................6, 7

*Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 182 v. N.Y.
  State Teamsters Council Health & Hospital Fund.*,
  909 F. Supp. 2d 102 (N.D.N.Y. 1995)......................................................................................3

*Tran v. Tran*,
  54 F.3d 115 (2d Cir. 1995)...........................................................................................................6

*UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc.*,
  660 F.3d 643 (2d Cir. 2011).......................................................................................................10

iv

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
    2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015)...........................................................5

FIRM:35273697

## PRELIMINARY STATEMENT

In their moving papers, Defendants New York Foundation for Senior Citizens Home Attendant Services, Inc. ("Home Attendant Services" or "HAS") and Linda Hoffman (collectively, "Defendants") demonstrated that an order compelling arbitration and dismissing the action is warranted because the collective bargaining agreement ("CBA") between Plaintiff's bargaining representative, 1199 SEIU United Healthcare Workers East ("1199" or the "Union") and HAS, as amended by a 2015 Memorandum of Agreement ("MOA"), expressly requires arbitration on an individual basis of all of Plaintiff's federal and state wage-hour and related claims asserted in this action.

Plaintiff's opposition provides no meaningful response to these arguments and fails to refute the explicit language of the MOA, which expressly provides that all claims brought under federal, state and local wage-hour and wage parity statutes are subject exclusively to the grievance and arbitration procedures set forth in the CBA and MOA.  Plaintiff's claim that there is no basis for the Court to compel arbitration under the MOA is without merit.  The MOA was signed, ratified and approved well before Plaintiff commenced this action and is therefore fully in effect and enforceable.  For the reasons set forth herein and in Defendants' main brief, the Court should compel arbitration of Plaintiff's claims and dismiss the action in its entirety.

## ARGUMENT

### POINT I
### A VALID, BINDING AGREEMENT TO ARBITRATE
### EXISTS BETWEEN HAS AND THE UNION

A.    **The MOA Constitutes a Valid, Binding Agreement to Arbitrate.**

Plaintiff erroneously contends that there is no agreement to arbitrate because the MOA has not been:  (1) signed by the Union; (2) ratified by the Union membership; (3) approved by

1

HAS' Board of Directors; and (4) approved by the New York City Human Resources Administration ("HRA"). Plaintiff argues that under New York law, no contract arises unless and until all of these conditions precedent to the formation or existence of the MOA occur. (Pl. Opp. at 9). Contrary to Plaintiff's assertions, each of these events has occurred.

Execution. As Plaintiff concedes (Pl. Opp. at 6), Linda Hoffman, President of HAS, signed the MOA on behalf of HAS on December 24, 2015. Rona Shapiro, Executive Vice President, Home Care for the Union signed the MOA on December 29, 2015. *See* Hoffman Decl. at ¶ 2; Ex. D.[1] Therefore, the MOA is fully executed.

Union Ratification. Bargaining unit employees of HAS ratified the MOA on February 24, 2016.[2] The Union confirmed ratification of the MOA by its membership by letters to HAS dated February 24 and 25, 2016. *See* Hoffman Decl. at ¶ 4; Ex. E.

Board Approval. At a meeting of HAS' Board of Directors held on February 8, 2016, Ms. Hoffman reported that the MOA had been executed. The Board of Directors then approved the terms of the MOA, and unanimously ratified and approved the execution of the MOA. *See* Hoffman Decl. at ¶ 3.

HRA Approval. By letter dated March 17, 2016, the HRA advised HAS that it had reviewed the MOA and found it to be consistent with HRA requirements. Accordingly, the HRA

---

[1] Exhibits A, B and C are attached to the Declaration of Kenneth W. DiGia, dated March 18, 2016. Exhibits D, E and F are attached to the Declaration of Linda R. Hoffman, dated June 10, 2016, submitted in connection with this Reply Memorandum of Law. All exhibits are referenced herein as "Ex. ___."

[2] Because the MOA has already been ratified, Plaintiff's arguments regarding Defendants' purported "improper communications" (Pl. Opp. 16-19) with Plaintiff are irrelevant.

FIRM:35273697

approved the MOA.[3]  *See* Hoffman Decl. at ¶ 5; Ex. F.

Plaintiff cannot genuinely dispute that the MOA is in effect and applicable to Plaintiff's claims.  By its plain terms, the MOA is "effective December 1, 2015" (*see* Ex. C at p. 1), and the incontrovertible documentary evidence establishes that all of the so-called "conditions precedent to its formation" (Pl. Opp. at 8-9) have been satisfied.[4]  As Judge Forrest recently held in *Chan*, the MOA constitutes a valid agreement between the parties to arbitrate.  *Chan*, 2016 U.S. Dist. LEXIS 73039, at *4.

Even assuming, *arguendo*, that any of these events – execution, ratification or approval – had not occurred, the MOA would nevertheless be effective.  In the Second Circuit, "technical rules of contract do not control the question of whether a collective bargaining agreement has been reached."  *Am. Fed'n of Television & Radio Artists v. Inner City Broad. Corp.*, 748 F.2d 884, 886-87 (2d Cir. 1984).  Instead, courts deciding whether an arbitration agreement exists in the collective bargaining context "must look to 'federal substantive law, fashioned from the policy of our national labor laws,'" which "encourages the formation of collective bargaining agreements."  *Gen. Contractors Ass'n v. Local No. 46, Metallic Lathers Union & Reinforcing Iron Workers*, 1990 U.S. Dist. LEXIS 10223, *10 (S.D.N.Y. Aug. 1, 1990); *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 182 v. N.Y. State Teamsters Council*

---

[3] In any event, HRA's failure or refusal to approve the MOA would not render it ineffective.  In *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, a case involving a virtually identical MOA between 1199 and another home attendant program containing the same arbitration agreement, the Hon. Katherine B. Forrest recently held that the MOA was in effect even absent the HRA's approval.  2016 U.S. Dist. LEXIS 73039, *6 n.2 (S.D.N.Y. Feb. 3, 2016), *reconsideration denied*, No. 15-CV-9605, Docket No. 47 (S.D.N.Y. Apr. 8, 2016).

[4] Additionally, Plaintiff's reliance on *Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005), is misplaced. (Pl. Opp. at 9).  In *Adams*, the Court analyzed the validity of a separate agreement containing an express provision that it would be inoperative absent the execution by the parties of a collective bargaining agreement within a specific period of time. The issue before the Court was whether the separate agreement was valid where the agreement was executed outside of the specified time limit.  No such condition exists here.

3

*Health & Hospital Fund.*, 909 F. Supp. 2d 102, 107 (N.D.N.Y. 1995).  Indeed, New York federal

courts have held collective bargaining agreements to be valid despite not even being reduced to

writing, *Am. Fed'n of Television & Radio Artists*, 748 F.2d at 886-87, or not being signed by the

parties, *La Barbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 271 (E.D.N.Y. 2010).  Further, the

existence of a contract in the collective bargaining context may be established through the

conduct of the parties recognizing the contract.  *See Brown v. C. Volante Corp.*, 194 F.3d 351,

355 (2d Cir. 1999); *Empire State Carpenters Welfare Annuity v. Conway Constr. of Ithaca, Inc.*,

2010 U.S. Dist. LEXIS 15441, *17-22 (E.D.N.Y. Feb. 19, 2010).  The MOA is effective and

should be enforced.[5]

**POINT II**
**PLAINTIFF IS REQUIRED TO ARBITRATE HER CLAIMS**

A.      **The Parties Agreed to Arbitrate and Plaintiff's Claims Fall**
        **Within the Scope of the Arbitration Agreement.**

Plaintiff, through her Union, is party to the valid arbitration agreement contained in the

MOA, which clearly specifies that all wage-hour and related claims brought by employees or the

Union must be submitted exclusively to the alternative dispute resolution procedures provided

for in the agreement. Plaintiff's claims under the FLSA, NYLL and Wage Parity Act fall within

the scope of the arbitration agreement.  Indeed, because the language of the MOA explicitly

references each of these "Covered Statutes" in the arbitration agreement (*see* Ex. C at p. 8,

"ADR" at sec. 1), Plaintiff cannot dispute that her claims are subsumed within the arbitration

agreement.

---

[5] Plaintiff's argument that the original CBA, dated August 8, 2001, does not require mediation or arbitration of Plaintiff's claims (Pl. Opp. at 10-11), is moot.

4

B.     **Plaintiff's Wage Claims are Arbitrable.**

In tacit recognition that the arbitration agreement covers all of the FLSA, NYLL and Wage Parity act claims asserted in this action, Plaintiff attempts to avoid arbitration by arguing first, that "binding precedent prevents a union from waiving an employee's right to proceed with his [sic] wage claims in court" (Pl. Opp. 11), and second, that Plaintiff cannot adequately vindicate her rights in arbitration (Pl. Opp. 13).  Both arguments are misplaced.

1.   **There Is No Evidence That Statutory Wage Claims Were Intended To Be Non-Artbitrable.**

It is well-settled that federal and state statutory wage claims can be the subject of arbitration, absent a showing of contrary congressional intent.  *See Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 77-78 (2d Cir. 1998).  This includes claims brought pursuant to the FLSA, NYLL and Wage Parity Act, which have repeatedly been held to be arbitrable.  *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421, *47 (S.D.N.Y. May 6, 2015); *Reynolds v. de Silva*, 2010 U.S. Dist. LEXIS 18040, *13-14 (S.D.N.Y. Feb. 24, 2010); *Polit v. Global Foods Int'l Corp.*, 2015 U.S. Dist. LEXIS 51686, *6 n.5 (S.D.N.Y. Apr. 20, 2015); *Chan*, 2016 U.S. Dist. LEXIS 73039, at *6 (S.D.N.Y. Feb. 3, 2016).

Plaintiff fails to proffer any evidence of congressional intent that her claims are non-arbitrable and makes no attempt to distinguish the controlling authority recognizing and affirming the arbitrability of her claims.  Instead, Plaintiff points to cases that are themselves either distinguishable or wholly inapposite.  For example, Plaintiff relies on *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), for the proposition that Congress intended FLSA claims to be non-arbitrable.  However, the narrow holding in that case simply permits an FLSA claim to be heard in federal court, even where that claim arises out of the same facts that

5

could give rise to a claim under an employee's collective bargaining agreement.[6]  Accordingly, *Barrentine* has no application here.  *Moton v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17643, *14-17 (S.D.N.Y. Feb. 9, 2016) (McMahon, C.J.).

*Tran v. Tran*, 54 F.3d 115, 118 (2d Cir. 1995), is no more pertinent to Plaintiff's argument than *Barrentine* is.  In *Tran*, the Second Circuit followed *Barrentine* to hold that a plaintiff was not required to exhaust the arbitral remedy under his collective bargaining agreement prior to filing an FLSA claim in district court where the collective bargaining agreement did not specifically refer to the claims sought to be arbitrated.[7]  In any event, Plaintiff's argument is directly foreclosed by *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), the leading Second Circuit case addressing the arbitrability of FLSA claims. *Id.* at 297 (finding that an employee can waive his or her ability to proceed collectively under the FLSA in an arbitration agreement).

---

[6] In *Barrentine*, petitioners brought an FLSA claim in federal court after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of their union's collective bargaining agreement. The Supreme Court held that petitioners' wage claims under the FLSA were not barred by prior submission of their grievances to the dispute resolution process because an employee's rights under the FLSA as an individual might not be adequately protected by his union's collective bargaining process.  450 U.S. at 742-45.  That is not the situation here, where the claims to be arbitrated are specifically referenced in the MOA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (a provision in a collective bargaining agreement that clearly and unmistakably requires union members to arbitrate statutory claims is enforceable as a matter of law).

[7] The other cases Plaintiffs cites are also inapposite, each undertaking the analysis of whether a particular arbitration provision contained a "clear and unmistakable waiver" of federal statutory claims, rather than whether Congress intended such claims to be non-arbitrable. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 52 (1st Cir. 2013) (no clear and unmistakable waiver of FLSA claims where CBA arbitration provisions defined "grievances" as disputes arising out of interpretation of CBA and did not mention statutory claims, but recognizing that "*Pyett* strongly indicates that FLSA claims are indeed arbitrable"); *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461 (S.D.N.Y. 2010) (same).  In addition, in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016) no question regarding the arbitrability of FLSA claims was raised. Plaintiff's reference to the Second Circuit's decision in *Cheeks* is therefore misplaced. "That decision does not bear on the arbitrability of FLSA claims." *Bynum v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17644, *32 (E.D.N.Y. Feb. 12, 2016).

6

As Plaintiff has failed to refute Defendants' arguments demonstrating that arbitration of Plaintiff's claims is appropriate, the action should be dismissed and arbitration should be compelled on an individual basis.

### 2. **Plaintiff Can Adequately Vindicate Her Rights In Arbitration.**

Borrowing from the plaintiffs' unsuccessful opposition to arbitration in *Chan*, Plaintiff contends that the Court should decline to enforce the arbitration agreement because arbitration will be cost prohibitive, preventing her from vindicating her rights in that forum.[8] (Pl. Opp. 13). This argument also fails for three reasons.

First, the plaintiff in *Sutherland*, like Plaintiff here, argued that proceeding individually "would be 'prohibitively expensive' because the recovery she seeks is dwarfed by the costs of individual arbitration." 726 F.3d at 298. The Second Circuit rejected this argument, holding that "[d]espite the obstacles facing the vindication of Sutherland's claims, the Supreme Court's recent decision in *Italian Colors*, which reversed our decision in *In re American Express Merchants' Litigation*, 667 F.3d 204 (2d Cir. 2012), … compels the conclusion that Sutherland's class-action waiver is not rendered invalid by virtue of the fact that her claim is not economically worth pursuing individually." *Id.* "In other words, 'the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue that remedy.*'" *Id.*; *see also Raniere v. Citigroup Inc.*, 533 F. App'x 11, 13-14 (2d Circ. Aug. 12, 2013).

---

[8] In fact, rather than submit a declaration from Plaintiff or her own counsel, Plaintiff has inappropriately filed the declaration of Michael Taubenfeld, filed in connection with plaintiffs' opposition to arbitration in *Chan*. Docket No. 37.

FIRM:35273697

Second, while Plaintiff claims that she "would have to pay $4,375 to pursue her claim" in arbitration (Pl. Opp. 14), she fails to provide any evidence that she is likely to incur prohibitive costs by pursuing her claims through arbitration. *See Chan*, 2016 U.S. Dist. LEXIS 73039, at *8-9 (compelling arbitration where plaintiffs failed to meet their burden to show that arbitration would be cost-prohibitive).

Third, the arbitration agreement permits Plaintiff to recover costs of the arbitration if she is successful and affords Plaintiff all of the protections and remedies available in a judicial forum. Thus, Plaintiff would be entitled to the same statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law. Ex. C at p. 9, "ADR" at sec. 4. Plaintiff therefore fails to meet her burden of showing that arbitration would be cost-prohibitive.

C.      **The MOA Applies to Plaintiff's Claims.**

Plaintiff seeks to avoid the mandatory arbitration clause in the MOA by arguing that it cannot apply to her claims that accrued prior to the execution of the MOA. This argument is meritless.

The Second Circuit has held that in the absence of a provision placing a temporal limitation on arbitrability, an arbitration agreement may cover claims that accrued prior to the execution of the agreement to arbitrate. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98-99 (2d Cir. 1999); *Coenen v. R.W. Pressprich & Co.*, 453 F. 2d 1209, 1212 (2d Cir. 1972) (an arbitration clause that applied by its terms to "any controversy" between members covered claims that accrued before the members entered into the

agreement in the absence of an express temporal limitation); *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010).

Plaintiff's attempt to read a temporal limitation into the broad arbitration provision fails. Plaintiff points to language in the preamble of the arbitration clause, which notes that the purpose of the arbitration provision "is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes" and "the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes." (Pl. Opp. 20). This prefatory language fails to overcome the presumption of arbitrability because the language immediately following expressly states that "***all claims*** … asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the 'Covered Statutes')," in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article." Ex. C at p. 8, "ADR" sec. 1. The arbitration agreement contains no limiting language and therefore applies to all claims, regardless of when they accrued.

Significantly, the arbitration agreement at issue here was recently held to apply to claims that accrued prior to the execution, ratification and approval of the MOA. *Chan*, 2016 U.S. Dist. LEXIS 73039, at *7. Judge Forrest subsequently upheld her decision applying the MOA retroactively and compelling arbitration of all of the plaintiffs' claims, undertaking a thorough analysis of the retroactivity issue. No. 15-CV-9605, Docket No. 47.

Even if this prefatory language were deemed to raise an ambiguity as to temporal scope, in accordance with the federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration …." *Moses H. Cone Mem'l Hosp. v.*

9

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Citigroup, Inc. v. Abu Dhabi Investment Auth.*, 776 F.3d 126, 130 (2d Cir. 2015).   Plaintiff has presented no evidence creating a "positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute."[9]  *Chan*, No. 15-CV-9605, Docket No. 47 at p. 8 (quoting and distinguishing *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015)).   Accordingly, the arbitration agreement in the MOA applies to Plaintiff's claims.

## CONCLUSION

For the foregoing reasons and all of the reasons set forth in Defendants' main brief, the Court should dismiss this action and compel mediation/arbitration of Plaintiff's claims on an individual basis in accordance with the terms of the arbitration agreement.

Dated: New York, New York
       June 10, 2016

EPSTEIN BECKER & GREEN, P.C.

By: Kenneth W. DiGia
    Jeffrey H. Ruzal
    Adriana S. Kosovych
    250 Park Avenue
    New York, New York 10177
    (212) 351-4500

---

[9] Further, "[w]hile a gateway dispute about whether the parties are bound to a given arbitration clause raises a question of arbitrability for a court to decide," it is the role of the arbitrator, rather than the Court, to resolve issues of contract interpretation and arbitration procedures in the first instance. *Duran v. J. Hass Grp., L.L.C.*, 531 F. App'x 146, 147 (2d Cir. 2013) (summary order) (quotation marks omitted); *see UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 654 (2d Cir. 2011) ("procedural questions which grow out of the dispute and bear on its final disposition" are generally for the arbitrator to resolve in the first instance).

FIRM:35273697