| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 7/14/2016 |

-------------------------------------------------------------- X
BETHANIA RODRIGUEZ, *individually and on behalf of all others similarly situated*,  :
                            Plaintiff,  :

               -against-  :  15-CV-9817 (VEC)

NEW YORK FOUNDATION FOR SENIOR  :  MEMORANDUM &
CITIZENS HOME ATTENDANT SERVICES,  :  ORDER
INC., LINDA R. HOFFMAN, and JOHN DOES  :
#1-10,  :
                         Defendants.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff brings this putative class action against the New York Foundation for Senior Citizens Home Attendant Services ("HAS") and its President, Linda Hoffman (collectively, "Defendants"), alleging violations of New York common law as well as federal and New York labor law. Specifically, Plaintiff alleges breach of contract and unjust enrichment, in addition to violations of the Fair Labor Standards Act ("FLSA"), the Wage Parity Act, New York Labor Law, and the New York Wage Theft Prevention Act. On March 18, 2016, Defendants filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as a Motion to Compel Arbitration pursuant to a collective bargaining agreement between HAS and Plaintiff's Union (Dkt. 31). For the reasons stated below, the Motion to Compel Arbitration is GRANTED, and proceedings are stayed pending arbitration.

## BACKGROUND[1]

HAS employed Plaintiff as a home healthcare aide from July 2014 to June 2015. Sec. Am. Compl. at 8-9 (Dkt. 28).[2] Plaintiff asserts that during her employment with HAS, she and other home healthcare aides were not: notified of their rates of pay; paid regular wages for work completed; paid overtime wages for work in excess of 40 hours in one week; paid for travel time; or reimbursed travel expenses. Plaintiff is a member of SEIU United Healthcare Workers East. Pl. Sur Rep. at 1 (Dkt. 41).

In 2001, 1199 SEIU United Healthcare Workers East ("Union") and HAS signed a collective bargaining agreement ("CBA"). DiGia Decl., Ex. B at 3, 26 (Dkt. 32). The CBA governs hourly rates, holidays and leave, and other compensation issues. *See id.* at 8, 27. The CBA also sets forth the procedure for resolving disputes between Union employees and HAS. *Id.* at 23. In relevant part, the CBA defines "grievances" subject to the CBA as "any dispute between the Union (on its behalf or on behalf of any employee) with the employer involving the proper application, interpretation, or compliance with the specific written provisions of the Agreement." *Id.* The CBA further provides that "[a] grievance is subject to arbitration." *Id.*

In 2015, the Union and HAS modified and extended the 2001 CBA by a memorandum of agreement ("2015 MOA") that clarifies certain provisions of the CBA, including hourly rates and

---

[1]     The facts are, in part, taken from the Second Amended Complaint, cited as "Sec. Am. Compl." At this stage in the litigation, the Court assumes that all facts alleged in the Second Amended Complaint are true. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In order to determine the arbitrability of the dispute, the Court has considered the 2001 CBA and the 2015 MOA, even though they were not incorporated by reference or attached to the Second Amended Complaint. *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, n.2 (S.D.N.Y. 2010); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at n.3 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.")

[2]     Unless otherwise noted, all citations to the Second Amended Complaint and Declarations filed in support of memoranda of law reference the applicable ECF page number.

the scope and application of the company's mandatory arbitration process to address grievances. DiGia Decl., Ex. C at 2, 3 (addressing wages, travel time); *Id.* at 9-10 (providing procedures for resolving "any grievances," exclusively through mediation and arbitration). The 2015 MOA states that "[a]ll claims brought by either the Union or employees, asserting violations of or arising under the Fair Labor Standards Act (FLSA), New York Home Care Worker Wage Parity Law, or New York Labor Law . . . in any matter, shall be subject exclusively[ ] to the grievance and arbitration procedures described in this Article." *Id.* at 9-10. Further, the 2015 MOA states that "[p]ayment of the economic terms of this Memorandum of Agreement is conditioned upon . . . compliance with the Home Care Worker Wage Parity Law Public Health Law. . . . In the event the parties cannot resolve their dispute, the matter shall be referred to Martin F. Scheinman for resolution through binding arbitration." *Id.* at 9.

Because Plaintiff brought her claims directly to federal court, Defendants have moved to dismiss the action and to compel arbitration.

## DISCUSSION

### I.  Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, was designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of*

*Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). *See also* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

"In resolving a claim that an action must be directed to arbitration under an arbitration agreement, [a court] must determine: (i) whether the parties entered into an agreement to arbitrate; (ii) if so, the scope of that agreement; [and] (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable . . . ." *Arnold v. D'Amato,* No. 14–CV–6457 (PAE), 2015 WL 4503533, at *5 (S.D.N.Y. July 23, 2015). Further, to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration. *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. App'x 480, 481 (2d Cir. 2011) (summary order) (citing *Mercury Constr. Corp.*, 460 U.S. at 24–25); *Paramedics Electromedicina Comercial, Lida. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (noting that where an arbitration clause exists, presumptively "[d]oubts should be resolved in favor of coverage") (citation omitted). The Second Circuit has held that where all of the issues raised in a complaint are arbitrable and a stay is requested, the court must stay, rather than dismiss, the proceedings. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015).

## II.     The 2001 Collective Bargaining Agreement and 2015 Memorandum of Agreement Are Valid

The CBA and the 2015 MOA expressly demonstrate the parties' agreement to arbitrate all claims asserted by Plaintiff in this action, including claims brought under the FLSA, New York Labor Law, and Wage Parity Act.[3] The 2015 MOA specifies that all wage and hour-related

---

[3]     While not raised in Plaintiff's opposition, the scope of the arbitration agreement also covers Plaintiff's New York Wage Theft Prevention Act claims as well as her state common law claims of unjust enrichment and breach of contract. Those claims are tied to Plaintiff's statutory FLSA and NYLL claims and specifically invoke the Wage

4

claims brought by employees or the Union must be submitted to the alternative dispute resolution procedures provided for in the 2015 MOA and CBA. DiGia Decl., Ex. D at 8-9. Plaintiff does not dispute the coverage of the combined agreements but raises two arguments to dispute the validity of the agreements.

First, Plaintiff claims that there is no valid agreement to arbitrate because the 2015 MOA was not signed by the Union, ratified by the HAS Board, or approved by the NYC Human Resources Association ("HRA"), which Plaintiff asserts are conditions precedent under the 2015 MOA. These claims are unsupported by the evidence. On December 24, 2015, Linda Hoffman, President of HAS, signed the 2015 MOA on behalf of HAS. Hoffman Decl. at ¶ 2 (Dkt. 42); Hoffman Decl., Ex. D at 11. On December 29, 2015, Rona Shapiro, Executive Vice President for the Union, signed the 2015 MOA on behalf of the Union. *Id.* On February 8, 2016, Linda Hoffman reported to the HAS board that the 2015 MOA had been fully executed, and the board unanimously ratified and approved the execution of the 2015 MOA. Hoffman Decl. at ¶ 3; Hoffman Decl., Ex. E. By letter dated March 17, 2016, the HRA advised HAS that it had reviewed and approved the 2015 MOA. Hoffman Decl. at ¶ 5; Hoffman Decl., Ex. F.

Second, Plaintiff contends that she and other union members were not made aware of the 2015 MOA and could not assent to its terms, rendering the 2015 MOA invalid. When a Union has bargained for an arbitration agreement on behalf of its members, "[c]ourts generally may not interfere in [the] bargained for exchange." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009). "'Congress has seen fit to clothe the bargaining representative with powers comparable

---

Parity Act. Sec. Am. Compl. at 15-18. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*

5

to those possessed by a legislative body both to create and restrict the rights of those whom it represents.'" *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 54 (2d Cir. 2009) (quoting *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944)).  The statutory scheme that governs the Union's authority to act on behalf of its members prioritizes "continuity and majority rule" over the "complete satisfaction of all who are represented."  *N. L. R. B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967).  The Union is, however, simultaneously bound by a duty of fair representation requiring good faith dealing.  *Id.*  "A union breaches its duty of fair representation if its actions can fairly be characterized as so far outside a wide range of reasonableness . . . that [they are] wholly arbitrary, discriminatory, or in bad faith."  *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 66 (1991)) (internal quotation marks omitted).  Absent any evidence that the Union negotiated the CBA or 2015 MOA in bad faith or in an arbitrary or discriminatory manner, Plaintiff does not have a claim that she was inadequately represented such that the agreement is invalid and she is excused from its application.

Third, Plaintiff argues that the 2015 MOA only applies prospectively from December 1, 2015, and therefore does not cover her claims that arose before June 2015.  "The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate."  *Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, No. 15-CV-9605 (KBF), 2016 WL 3004518, at *2 (S.D.N.Y. Apr. 8, 2016) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98–99 (2d Cir. 1999); *Arrigo*, 408 Fed. App'x at 481).  Plaintiff cannot point to any temporal limit on arbitrability in either the 2001 CBA or the 2015 MOA; the language covering the scope of

6

eligible disputes for arbitration provides that "*all*" disputes, arising "*in any manner*" under the relevant statutes must be arbitrated.  DiGia Decl., Ex. D at 8 (emphasis added).  Thus, the 2015 MOA applies to Plaintiff's claims.

### III. Plaintiff's FLSA Claims Are Within the Scope of the Agreement and Are Subject to Mandatory Arbitration

Plaintiff also argues that she cannot be required to arbitrate her FLSA claim because a CBA cannot waive a union member's right to assert FLSA claims in federal court because Congress intended such claims to be non-arbitrable.  The party opposing arbitration bears the burden of showing that Congress intended to preclude mandatory arbitration of the claim. *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 78 (2d Cir. 1998).  There is no indication that Congress intended to make FLSA claims not amenable to mandatory arbitration.  *Chan*, 2016 WL 3004518, at *2 n.3 ("Numerous courts have held that FLSA claims may be subject to mandatory arbitration clauses."); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011) ("Congress did not intend FLSA claims to be non-arbitrable.").  Thus, as long as it is "clear and unmistakable" on the face of the arbitration agreement that the party waived his or her right to bring an FLSA claim to federal court, the waiver is enforceable.  *Pyett*, 556 U.S. at 260 (holding that union members' claims are subject to the CBA's arbitration provisions because the CBA "clearly and unmistakably requires respondents to arbitrate" them); *Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 79 (1998) (holding that a CBA requirement to arbitrate federal claims that is "clear and unmistakable" is enforceable).

The 2015 MOA explicitly states, "*[a]ll* claims . . . asserting violations of or arising under the Fair Labor Standards Act . . . *in any manner*, shall be subject *exclusively* to the grievance and arbitration procedures described in this article."  DiGia Decl., Ex. D at 8 (emphasis added).  The

7

arbitration agreement therefore clearly and unambiguously establishes that Plaintiff's FLSA claims are subject to mandatory arbitration.

### IV. Plaintiff Can Effectively Vindicate Her Rights Under the Arbitration Agreement

Finally, Plaintiff alleges that she cannot effectively vindicate her rights in arbitration because such a proceeding would be prohibitively expensive. The United States Supreme Court and the United States Court of Appeals for the Second Circuit have both expressed a willingness to invalidate an arbitration clause on public policy grounds if filing and administrative fees associated with the arbitration are so high as to make access to the forum impracticable. *Am. Express Co. v. Italian Colors Rest.*, ––– U.S. –––, 133 S. Ct. 2304, 2310 (2013); *Green Tree Financial Corp. Ala. v. Randolph,* 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 298 (2d Cir. 2013) (holding that the "effective vindication doctrine" allows courts to invalidate arbitration clauses where costs make access to the forum impractical). Plaintiff bears the burden of showing, beyond mere speculation, that the cost of arbitration would be prohibitive. *Chan*, 2016 WL 3004518, at *2 (citing *Green Tree Financial Corp. Ala.*, 531 U.S. at 92).

The 2015 MOA requires the parties first to mediate and then to arbitrate a dispute. DiGia Decl., Ex. D at 9. The estimated total cost of mediation and a single day of arbitration with Martin F. Scheinman, the arbitrator designated by the 2015 MOA, is $8,750. Pl. Opp. at 14 (Dkt. 36); Taubenfeld Decl. (Dkt. 37) at ¶¶ 5-6. The 2015 MOA provides that if the Union agrees to represent an employee in pursuing a claim in arbitration, the Union and the employer must split the mediation and arbitration costs. DiGia Decl., Ex. D at 9-10. If, however, the Union declines to represent the employee, then the employee must split the cost of mediation and

8

arbitration with HAS, unless the arbitrator finds in favor of the employee on any of her claims, in which case HAS must pay the full cost of the arbitration. *Id.* at 10. Thus, if the Union declines to represent an employee and the employee loses on the merits, the employee must pay approximately $4,000, at the minimum, for a single day of arbitration. Pl. Opp. at 14.

In this case, Plaintiff alleges that she earns, at most, $450 per week. *Id.* Given the cost of arbitration and Plaintiff's meager weekly earnings, compliance with the arbitration clause would be cost prohibitive if the Union were to choose not to pursue Plaintiff's claim. *See, e.g.*, *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016) (holding arbitration fees of $1,875 were cost prohibitive) (citing *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999)); *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (suggesting that $6,000 as a lower limit cost estimate for arbitration proceedings would be cost prohibitive, regardless of plaintiff's ability to pay).

Accordingly, the Court grants the motion to compel arbitration on the condition that either: (1) the Union represents Plaintiff in the grievance resolution process; or (2) if the Union chooses not to represent her, that HAS pays the full cost of the grievance resolution process, including mediation and arbitration, regardless of whether Plaintiff succeeds on the merits of any of her claims.[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED without prejudice to Plaintiff requesting that the Court reconsider its decision if the Union

---

[4] There is no provision in the 2015 MOA or CBA that requires HAS to bear the full cost of the grievance proceedings should the Union decline to represent an employee. Because, however, the Defendants moved to compel arbitration, they may elect to provide Plaintiff access to the forum by covering the cost of the proceedings. If they do not, mediation and arbitration are cost prohibitive to Plaintiff if the Union does not represent her. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 412 (S.D.N.Y. 2003) (plaintiffs cannot show that arbitration costs preclude them from effectively vindicating their federal statutory rights when defendants offered to pay the full cost of arbitration).

declines to represent Plaintiff and, in the face of the Union declining to represent Plaintiff, HAS refuses to agree to pay the entire cost of mediation and arbitration, regardless of whether Plaintiff prevails on any of her claims. The case is stayed pending arbitration.

**SO ORDERED.**

Date: July 14, 2016
New York, New York

VALERIE CAPRONI
United States District Judge